IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH ANN MAHONEY, and
ALICIA BENTING, and
RICHARD BENTING,

               Plaintiffs,

      v.

ELI LILLY AND COMPANY *et al.*,

               Defendants.

Civil Action No. 06-CV-02043 (RMU)

## ELI LILLY AND COMPANY'S REPLY BRIEF IN SUPPORT
## OF ITS MOTION TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS

Plaintiffs' Opposition to Defendant Eli Lilly and Company's Motion to Transfer to the

District of Massachusetts ("Plaintiffs' Opposition" or "Pls. Opp.") correctly states that each

motion to transfer must be decided on a case-specific basis.  Here, the facts support transfer of

the case to Massachusetts so that Lilly may obtain subpoena power over the key witnesses and

experts in the case, most of whom are located in the District of Massachusetts.  Despite repeated

requests by counsel for Lilly and other co-defendants, plaintiffs have yet to produce an expert

report for their key causation expert; Dr. Brian Berger's expert report is now nearly four months

late and will be produced, if at all, only after this Court's designated discovery deadline has

passed.  Plaintiffs, until recently, have ignored repeated attempts to schedule a deposition of Dr.

Berger.  For all these reasons, Lilly respectfully disagrees that it "has had no trouble with any of

the witnesses it has wished to depose."  Pls. Opp. at 1.  In fact, plaintiffs' unwillingness or

inability to produce its key, case-specific causation expert for deposition prior to the close of

discovery in this case demonstrates that transfer is appropriate to ensure that Lilly has access to key witnesses should the case proceed to trial.

Plaintiffs do not dispute that most of the alleged events giving rise to plaintiffs' claims, including the alleged prescription, purchase, and ingestion of DES, occurred in the District of Massachusetts. Nor do they dispute that all of the non-expert witnesses in this case, including plaintiffs and plaintiffs' treating physicians, are located in the District of Massachusetts. Plaintiffs' arguments regarding factors such as plaintiffs' experts appearing without need for subpoenas, Lilly's previous litigation of an insurance claim in the District of Columbia, and Lilly's governmental contacts here have no significant bearing on a motion to transfer under 28 U.S.C. Section 1404(a) and have been rejected by this Court. As set forth in Lilly's Memorandum in Support of its Motion to Transfer ("Memo. in Support") (at Docket No. 30-2) and below, an analysis of underlined relevant factors and controlling authority supports transfer of this case to the United States District Court for the District of Massachusetts.[1]

---

[1] It is notable that this case, like numerous others filed by plaintiffs counsel in the District of Columbia since 2005, has no relevant contacts there. The following list of cases were transferred from the District of Columbia to the more convenient forum. *See Awwad v. Eli Lilly and Company*, Civil Action No. 05-0605 (D.D.C. May 2, 2006) (Urbina, J.) (transferred to Texas), at docket entry 21; *Barkman v. Eli Lilly and Company*, Civil Action No. 05-0629 (D.D.C. April 13, 2007) (Kennedy, J.) (transferred to Washington) at docket entry 49; *Dean v. Eli Lilly and Company*, Civil Action No. 06-1375 (D.D.C. June 1, 2007) (Sullivan, J.) (transferred to Massachusetts),at docket entry 21; *Ducharme-Conrad v. Eli Lilly and Company*, Civil Action No. 06-1838 (D.D.C June 25, 2007) (Walton, J.) (transferred to Massachusetts), at docket entry 19; *Halloran v. Eli Lilly and Company*, Civil Action No. 07-0152 (D.D.C. April 27, 2007) (Bates, J.) (transferred to Massachusetts), at docket entry 17; *Lagor v. Eli Lilly and Company*, Civil Action No. 06-1967 (D.D.C. June 18, 2007) (Bates, J.) (transferred to Rhode Island), at docket entry 22; *LaSalla v. Eli Lilly and Company*, Civil Action No. 07-0290 (D.D.C. May 25, 2007) (Urbina, J.) (transferred to Eastern District of Louisiana), at docket entry 16; *McEntee v. Eli Lilly and Company*, Civil Action No. 07-0457 (D.D.C. June 14, 2007) (Sullivan, J.) (transferred to Massachusetts), at docket entry 16; *Mordecai v. Eli Lilly and Company*, Civil Action No. 06-1634 (D.D.C. May 9, 2007) (Lamberth, J.) (transferred to Massachusetts), at docket entry 55; *Petrarca v. Eli Lilly and Company*, Civil Action No. 07-0417 (D.D.C. June 26, 2007) (Huvelle, J.) (transferred to Massachusetts), at docket entry 16; *Corbett v. Eli Lilly and Company*, Civil Action No. 05-1584 (D.D.C. June 6, 2006) (Robertson, J.) (transferred to Massachusetts), at docket entry 16; *Duseau v. Eli Lilly and Company*, Civil Action No. 05-1583 (D.D.C. March 22, 2006) (Kessler, J.) (transferred to Massachusetts), at docket entry 16; *Erickson v. Eli Lilly and Company*, Civil Action No. 05-2062 (D.D.C. April 18, 2006) (Walton, J.) (transferred to Massachusetts), at docket entry 15; *Gordon v. Eli Lilly and Company*, Civil Action No. 06-1055 (D.D.C. November 11, 2006) (Leon, J.) (transferred to Massachusetts), at docket entry 15; *Lentz v. Eli Lilly and Company*, Civil Action No. 06-1374 (D.D.C. December 18, 2006) (Huvelle, J.) (transferred to Maine), at docket

I.    **TRANSFER TO THE DISTRICT OF MASSACHUSETTS IS APPROPRIATE**

A.    <u>Discovery in this Matter is Not Complete</u>

Discovery in this matter is not yet complete.  Lilly still needs to depose four of plaintiffs'

experts.  In addition, Lilly intends to depose Dr. Marion Craighill who treated plaintiff Alicia

Benting in 1990 and noted in Ms. Benting's medical records: "Pt. in litigation with DES

manufacturer -- requests all records."  *See* Alicia (Mahoney) Benting's medical record dated

August 25, 1990, Bates labeled PL260 (attached as Exhibit 1 to the Affidavit of Lynn M.

Zuchowski in Support of Eli Lilly and Company's Reply Brief in Support of its Motion to

Transfer ("Zuchowski Aff.")).  Dr. Craighill's deposition testimony is manifestly critical to

Lilly's statute of limitations defense and may identify other treating physicians who will need to

be deposed (it bears repeating that <u>all</u> of plaintiffs' treating physicians practice in

Massachusetts).

Moreover, plaintiffs have yet to produce the expert report of their key causation expert,

Dr. Brian Berger.  Counsel for Lilly and Squibb have requested the report on numerous

occasions.  *See* January 11, 2008 letter from Sidney Leech to Renee Robinson-Meyer, at 2

(attached as Exhibit 2 to Zuchowski Aff.).  Defendants have been trying to schedule Dr. Berger's

---

entry 21; *Sugrue v. Eli Lilly and Company*, Civil Action No. 06-0764 (D.D.C. October 10, 2006) (Kessler, J.) (transferred to Massachusetts), at docket entry 13; *Taliercio v. Eli Lilly and Company*, Civil Action No. 05-0339 (D.D.C. June 27, 2005) (Kessler, J.) (transferred to New Jersey), at docket entry 14; and *Theriault v. Eli Lilly and Company*, Civil Action No. 05-1556 (D.D.C. May 1, 2006) (Collyer, J.) (transferred to Massachusetts),docket entry 16; *Couto v. Eli Lilly and Company*, Civil Action No. 05-00673 (D.D.C. August 5, 2005) (Friedman, P.) (transferred to Massachusetts) at docket entry 8; *Diotalevi v. Eli Lilly and Company*, Civil Action No. 07-636 (D.D.C. June 25, 2007) (Huvelle, E.) (transferred to Massachusetts), at docket entry 16; *McKelvey v. Eli Lilly and Company*, Civil Action No. 06-1820) (D.D.C. April 12, 2007) (Collyer, R.) (transferred to California), at docket entry 18; *Mordecai v. Eli Lilly and Company*, Civil Action No. 06-1634) (D.D.C. May 9, 2007) (Lamberth, R.) (transferred to Massachusetts), at docket entry 55; *Pavlicas v. Eli Lilly and Company*, Civil Action No. 07-1318 (D.D.C. September 20, 2007) (Kennedy, H.) (transferred to New York), at docket entry 33; *Russell v. Eli Lilly and Company*, Civil Action No. 05-0119 (D.D.C. June 23, 2006) (Kollar-Kotelly, C.) (transferred to Massachusetts), at docket entry 14.

deposition since January of this year. *See* January 14, 2008 email from Brian Henninger to

Renee Robinson-Meyer (attached as Exhibit 3 to Zuchowski Aff.). The first date proposed by

plaintiffs' counsel was March 27, 2008, three days the Court's designated discovery deadline.

*See* March 7, 2008 email from Erica Rodriguez to Renee Robinson-Meyer (attached as Exhibit 4

to Zuchowski Aff.). Plaintiffs' counsel has only recently suggested alternate dates on which Dr.

Berger is available. Lilly has been diligent in seeking Dr. Berger's deposition. Plaintiffs' claim

of cooperation and ease in producing Dr. Berger and other key witnesses for deposition in this

case is not supported by the record. Completion of the significant discovery that remains in this

case would be more efficient in the District of Massachusetts.

### B.     Lilly's Motion to Transfer is not Untimely

Plaintiffs argue that Lilly's Motion to Transfer was filed too late because written

discovery has been exchanged and some fact depositions have been taken. *See* Pls. Opp. at 2

(Docket No. 33). Lilly reasonably waited to file the present motion until the information

presented in plaintiffs' written discovery responses could be confirmed at deposition.

Defendants requested dates for plaintiffs' depositions for the first time on November 5, 2007, but

received no proposed dates from plaintiffs' counsel until January 11, 2008. *See* January 11, 2008

letter from Sidney Leech to Renee Robinson-Meyer, at 2 (Exhibit 2 to Zuchowski Aff.).

Plaintiffs' argument that the present motion is untimely rings hollow when the timing of the

motion is due in large part to the unresponsiveness of plaintiffs' counsel.

Plaintiffs' also cannot be heard to argue that they will be prejudiced by transfer when

plaintiffs' counsel has sought transfer in other DES cases even later than Lilly does here. In

*Quine v. Eli Lilly and Company,* plaintiffs' counsel filed a motion to transfer after discovery had

closed and after summary judgment motions had been filed. *See* Plaintiff's Motion to Transfer to

the District of Connecticut, *Quine v. Eli Lilly and Company*, No. 04-0684 (D.D.C.) (attached as

Exhibit 5 to Zuchowski Aff.).  Plaintiffs' counsel argued that Connecticut law should be interpreted by a federal court sitting in Connecticut and that the timing of the motion would result in no prejudice to Lilly.  Similarly here, Massachusetts law should be interpreted by a federal court sitting in Massachusetts and the timing of the motion will result in no prejudice to plaintiffs.  At this point in the litigation, transfer is appropriate because "th[e] court has neither dealt with other issues in the suit nor has it familiarized itself with the underlying merits of the case."  *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 57 (D.D.C. 2000).

Further, the cases cited by plaintiffs to support their Opposition are distinguishable from the facts of this present action.  In *Peteet v. Dow Chem. Co*., the court upheld the lower court's denial of Dow's transfer motion in part because Dow made no showing that the venue to which it proposed transferring the case was a more convenient forum.  868 F.2d 1428, 1436 (5th Cir. 1989).  *See also EEOC v. Hartz Mountain Corp*., No. 89-2726-G, 1991 U.S. Dist. LEXIS 21065, at *6 (W.D. Tenn. April 19, 1991) (noting that party requesting transfer made no showing that proposed transfer venue was a more convenient forum).  Here, Lilly has shown that the District of Massachusetts is the most convenient forum by demonstrating that all of the fact witnesses it currently plans on deposing and that the vast majority of the fact witnesses it plans on calling at trial are located in the District of Massachusetts and are not subject to the subpoena power of the District of Columbia.  *See* Memo. in Support at 4-5.  The only fact witnesses who no longer reside in the District of Massachusetts are the plaintiffs' parents who reside in Florida and are not subject to the subpoena power of the courts in either the District of Massachusetts or the District of Columbia.  *McGraw-Edison Co. v. Van Pelt* is also distinguishable.  350 F.2d 361 (8th Cir. 1965).  There, in considering the timing of the transfer motion, the court also considered the fact that numerous motions had been filed including motions for extension of time to plead, motions

to calendar cases for trial in one city instead of another, motions to dismiss the actions, motions to sever the claims and objections to taking depositions by the plaintiffs. *Id.* at 363. Here, no such motions have been filed in this Court and transfer will not result in the waste of judicial resources in either district.

    **C.**    **All Relevant Witnesses are Outside the Subpoena Power of the District of Columbia.**

Plaintiffs' argument that Lilly must make a showing that the witnesses will be unwilling to travel to the District of Columbia to testify at trial is also unavailing. *See* Pls. Opp. at 4. By definition, all of the known, relevant witnesses are unavailable to testify at trial in the District of Columbia because they are outside the 100 mile subpoena power of this Court. Further, the cases relied upon by plaintiffs are not persuasive. In *Thayer/Patricof Educ. Funding LLC v. Pryor Res., Inc.,* 196 F. Supp. 2d 21, 35 (D.D.C. 2002), unlike here, the relevant events had a "significant connection with this forum." As such, plaintiffs' choice of forum was afforded "great deference." *Id.* at 31. In *FC Inv. Group LC v. Lichtenstein,* 441 F. Supp. 2d 3, 6, 13 (D.D.C. 2006), the District of Columbia had "meaningful ties to the controversy" because many of the events at issue took place in the District of Columbia and because the plaintiff was located in the District of Columbia.

Moreover, in *Thayer,* the party moving for transfer had to meet a higher burden of showing the necessity of transfer due to the fact that the case had substantial factual connections to the District of Columbia. *See* 196 F. Supp. 2d at 28, 31. Thus, any showing that witnesses would be unwilling to travel to the District of Columbia discussed in this case was intended as a balancing factor to overcome the deference accorded to plaintiff's choice of forum. Here, plaintiffs are not entitled to such deference because they do not reside in this forum and there is no factual nexus between this case and the District of Columbia. Indeed, "the presumption may

switch to [Lilly's] favor [because] neither party resides in the chosen forum and the cause of action arises elsewhere." *Abbott Labs. v. United States Fid. & Guar. Co.,* No. No. 88-2232, 1989 WL 5557, at *2 (D.D.C. Jan. 10, 1989).

Judge Bates, author of the *Thayer* opinion, and Judge Collyer, author of the *FC Inv. Group* opinion, have both subsequently authored opinions granting Lilly's motions to transfer other DES cases without requiring any showing of the unavailability of the witnesses. *See Lagor v. Eli Lilly and Company,* No. 06-CV-1967 (D.D.C. June 18, 2007) (Bates, J.) (attached as Exhibit 6 to Zuchowski Aff.); *McKelvey v. Eli Lilly and Company,* No. 06-CV-1820 (D.D.C. April 12, 2007) (Collyer, J.) (attached as Exhibit 7 to Zuchowski Aff.).

Finally, it is worth noting that plaintiffs' counsel has previously filed motions to transfer DES cases that, like the instant case, had no connection to the District of Columbia. However, in their own motions to transfer, plaintiffs' counsel made no showing of the unavailability of witnesses and made no reference to *Thayer or FC Inv. Group. See* Plaintiffs Motion to Transfer to the Eastern District of New York, filed Aug. 8, 2007 in *Pavlicas v. Eli Lilly and Company,* No. 07-1318 (D.D.C.) (attached as Exhibit 8 to Zuchowski Aff); Plaintiffs' Motion to Transfer to the Eastern District of New York, filed Oct. 30, 2007 in *Bausch v. Eli Lilly and Company,* No. 07-1362 (D.D.C.) (attached as Exhibit 9 to Zuchowski Aff); Partial Consent Motion to Transfer to the Eastern District of New York, filed Jan. 8, 2008 in *Dumont v. Eli Lilly and Company,* No. 07-1635 (D.D.C.) (attached as Exhibit 10 to Zuchowski Aff). These previous filings by plaintiffs' counsel demonstrate plaintiffs' counsel's recognition of the fact that any showing of witness unavailability is not required by this Court in cases, like this one, where the plaintiff does not reside in the District of Columbia and where the case has no factual connection to the District of Columbia.

**D.    Lilly's De Minimus Contacts with the District of Columbia do not Detract from the Great Weight of the Evidence Supporting Lilly's Motion to Transfer**

This case should not remain in the District of Columbia because of Lilly's activities as a company.  Lilly is headquartered and maintains its principal place of business in Indiana.  Nothing about these facts makes the District of Columbia, which has no connection to this case, a more convenient forum than the District of Massachusetts, which has substantial connections to this case.  Likewise, the fact that Lilly may sell products in the District of Columbia does not make the District of Columbia a more convenient forum than the District of Massachusetts for a case involving the claims of a Massachusetts resident who was allegedly exposed to DES in Massachusetts.

Additionally, plaintiffs' argument that Lilly's and other manufacturers' interaction with the FDA provides a connection to the District of Columbia has been flatly rejected by courts in the District of Columbia.  *See In re AT&T Access Charge Litig.,* No. 051360, 2005 WL 3274561, at *3 (D.D.C. Nov. 16, 2005) (Huvelle, J.) (holding that to accept governmental contacts in D.C. as a basis for venue "would amount to an open invitation to litigants to sue private parties in this jurisdiction whenever the case has some relationship to an agency action."); *see also DeLoach v. Phillip Morris Cos.,* 132 F. Supp. 2d 22, 25 (D.D.C. 2001); *Cameron v. Thornburgh,* 983 F.2d 253, 256 (D.C. Cir. 1993).  Indeed, this Court has specifically rejected the argument that FDA regulatory action regarding DES established a connection between DES lawsuits and the District of Columbia.  *See Thompson v. Eli Lilly and Co.,* No. 03-CV-00122, at 5 (D.D.C. June 27, 2003) (Walton, J.) (attached as Exhibit 11 to Zuchowski Aff); *Abramson v. Eli Lilly and Co.,* No. 03-CV-2541, at 4 n.6 (D.D.C. Oct. 25, 2004) (Bates, J.) (attached as Exhibit 12 to Zuchowski Aff).

Plaintiffs' argument that the District of Columbia is a proper forum for this litigation because Lilly filed a suit against its insurers in the District of Columbia is equally unpersuasive.

*See* Pls. Opp. at 7. In both *Abramson* and *Thompson,* this Court rejected Lilly's previous filing of a lawsuit in the District of Columbia as determinative of a motion to transfer. *See Thompson,* at 5 (Exhibit 11 to Zuchowski Aff.); *Abramson,* at 2-3 (Exhibit 12 to Zuchowski Aff.). As Judge Bates noted in *Abramson,* Lilly's choice of forum in its litigation against insurers regarding coverage for DES claims was based in part on the need to accommodate travelers from around the globe. *See Abramson,* at 3 n.4 (Exhibit 12 to Zuchowski Aff.). This is not an issue for plaintiffs in the present case because they reside within the District of Massachusetts, as do all of the other non-expert witnesses in this case, including the physicians who allegedly diagnosed and treated plaintiffs Elizabeth Mahoney and Alicia Benting's alleged injuries. Further, the fact that the District of Columbia was a convenient forum for that litigation does not determine that the District is appropriate for this case.

## **CONCLUSION**

This case has substantial connections to the District of Massachusetts and no connection whatsoever to the District of Columbia.  Because discovery has not yet ended and Lilly needs to depose plaintiffs' key experts and treaters and may wish to call them to testify at trial, Lilly respectfully requests that the Court transfer this action to the United States District Court for the District of Massachusetts so these key individuals can be under the subpoena power of the court in which the action sits.

Respectfully submitted,

ELI LILLY AND COMPANY

/s/ James J. Dillon_____
James J. Dillon (DC Bar #485593)
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000

Dated: March 27, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH ANN MAHONEY, and
ALICIA BENTING, and
RICHARD BENTING,

                Plaintiffs,

    v.

ELI LILLY AND COMPANY *et al.*,

                Defendants.

Civil Action No. 06-CV-02043 (RMU)

**AFFIDAVIT OF LYNN M. ZUCHOWSKI IN SUPPORT OF ELI LILLY AND
COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION
<u>TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS</u>**

       I, Lynn M. Zuchowski, being first sworn on oath, say that the following is true and
correct.

       1.      I am an attorney at Foley Hoag LLP, counsel for Eli Lilly and Company ("Lilly")
in this action.  I am duly admitted to practice in the District of Massachusetts.

       2.      Attached as Exhibit 1 is a true copy of Alicia (Mahoney) Benting's medical
record dated August 25, 1990 and Bates labeled PL260.

       3.      Attached as Exhibit 2 is a true copy of a January 11, 2008 letter from Sidney
Leech to Renee Robinson-Meyer.

       4.      Attached as Exhibit 3 is a true copy of a January 14, 2008 email from Brian
Henninger to Renee Robinson-Meyer.

       5.      Attached as Exhibit 4 is a true copy of a March 7, 2008 email from Erica
Rodriguez to Renee Robinson-Meyer.

6.     Attached as Exhibit 5 is a true copy of Plaintiff's Motion to Transfer to the District of Connecticut, *Quine v. Eli Lilly and Company*, No. 04-0684 (D.D.C.).

7.     Attached as Exhibit 6 is a true copy of the Order granting Lilly's motion to transfer in *Lagor v. Eli Lilly and Company,* No. 06-CV-1967 (D.D.C. June 18, 2007) (Bates, J.).

8.     Attached as Exhibit 7 is a true copy of the Order granting Lilly's motion to transfer in *McKelvey v. Eli Lilly and Company,* No. 06-CV-1820 (D.D.C. April 12, 2007) (Collyer, J.).

9.     Attached as Exhibit 8 is a true copy of Plaintiffs Motion to Transfer to the Eastern District of New York, filed Aug. 8, 2007 in *Pavlicas v. Eli Lilly and Company,* No. 07-1318 (D.D.C.).

10.     Attached as Exhibit 9 is a true copy of Plaintiffs' Motion to Transfer to the Eastern District of New York, filed Oct. 30, 2007 in *Bausch v. Eli Lilly and Company,* No. 07-1362 (D.D.C.).

11.     Attached as Exhibit 10 is a true copy of Partial Consent Motion to Transfer to the Eastern District of New York, filed Jan. 8, 2008 in *Dumont v. Eli Lilly and Company,* No. 07-1635 (D.D.C.).

12.     Attached as Exhibit 11 is a true copy of a order transferring the case to Massachusetts in *Thompson v. Eli Lilly and Co.,* No. 03-CV-00122, at 5 (D.D.C. June 27, 2003) (Walton, J.).

13.     Attached as Exhibit 12 is a true copy of an order transferring the case to New Jersey in *Abramson v. Eli Lilly and Co.,* No. 03-CV-2541, at 4 n.6 (D.D.C. Oct. 25, 2004) (Bates, J.).

Lynn M. Zuchowski

Notary Public
My commission expires:

WENDY MATTO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
August 28, 2009

Dated:  March 27, 2008

**Exhibit 1**

NAME: MAHONEY, Alicia

ADDRESS:

PHONE HM: _____ WK: _____

DOB:

REF MD: _____

UNITED
GYNECOLOGIC
PHYSICAL EXAMINATION

Date: 8/25/90

| PHYSICAL EXAM: | BP: | P: | Temp | Hgt | Wgt |
|---|---|---|---|---|---|

**General** _well developed_ _____ woman in no acute distress

**Skin** ⊖ clubbing _____ cyanosis _____ ⊖ edema _____

**HEENT and Neck** PERRLA EOM _____

**NECK** ⊖ masses _____ ⊖ nodes _____ nl thyroid

**Heart** rate rythym s₁ s₂ _____ nl _____

**Lungs** nl auscultation _____ nl percussion

**Breasts** _____ masses _____ ⊖ tenderness ⊘ skin changes

self exam _____

**Abdomen** soft _____ ⊖ tenderness _____ nl bowel sounds

scars _____ back _____ ⊖ costovertebral tenderness

**Pelvis** _____

**Vulva** introitus _____ nl RUGA _____ ⊖ lesions _____

**Vagina** discharge _____

**Cervix** ectropion _____ _____ cervical motion tenderness

**Uterus** _____ verted _____ flexed _____ size _____ tender

**Adnexae** right _____ masses _____ tenderness(left) _____

**PAP** ☑ Yes ✗3 ☐ No WET PREP

**Rectum** _____ Occult Blood

**Extremities** _____

**Previous Test Results** _____

**ASSESSMENT** _____

**PLAN** _____

| | |
|---|---|
| MYCOPLASMA | |
| CHLAMYDIA | |
| GC | |
| ESR | |
| CBC | |
| FREE | |
| CHOL | |
| HDL | |
| RR | |
| URINE | |
| BSU | |
| URINE CULT | |

PL2620

**Exhibit 2**

# GOODELL, DeVries, Leech & Dann, LLP

ATTORNEYS AT LAW
ONE SOUTH STREET, 20TH FLOOR
BALTIMORE, MARYLAND 21202

TELEPHONE (410) 783-4000

FACSIMILE (410) 783-4040

SIDNEY G. LEECH
SGL@GDLDLAW.COM
WRITER'S DIRECT NUMBER
VOICE: 410-783-4017
FAX: 410-951-0461

January 11, 2008

ADMITTED IN MARYLAND
AND THE
DISTRICT OF COLUMBIA

Renee L. Robinson-Meyer, Esquire
Aaron M. Levine & Associates, P.A.
1320 19th Street, N.W., Suite 500
Washington, D.C.  20036

       Re:    Elizabeth Ann Mahoney & Alicia Benting, et vir. v. Eli Lilly & Co., et al.
              <u>Civil Action No.: 06-CV-2043 (RMU)</u>

Dear Renee:

     As you know, I have been defending DES cases for almost twenty years.  Most of these cases were filed by your office.  Over the years, we have had a good working relationship, particularly with respect to discovery.  However, for some reason, the above-captioned cases seem to be an exception to the general rule.  This letter will set forth my problems with a view toward working together cooperatively in the future.

     First, I received these cases on November 2, 2006.  Interrogatories and Request for Production of Documents were propounded to both Plaintiffs on December 4, 2006.  The first set of discovery responses from Elizabeth Ann Mahoney were not received until October 9, 2007 or, in other words, 11 months after they were propounded.  The discovery responses on behalf of Alicia Benting were received on October 10, 2007, also over 11 months after they were propounded.  These discovery responses did not specifically respond to the Interrogatories and Request for Production of Documents which were propounded on behalf of my client, Bristol-Myers Squibb Company.  I should not have to beg for the information requested in my discovery requests when you see fit to answer Interrogatories that were not in fact propounded to your clients in the above-captioned case.  I understand that in the New York DES litigation apparently there is a Uniform Preliminary Request for Information.  However, no such discovery document has been adopted in the District of Columbia to my knowledge.  It seems that defense counsel have acquiesced in your practice in responding to the Uniform Preliminary Request for Information; however, this does not mean that we don't want responses to the specific

Renee L. Robinson-Meyer, Esquire
January 11, 2008
Page 2

Interrogatories and Request for Production of Documents propounded on behalf of each of our clients.

Second, beginning with my letter of November 5, 2007, I have repeatedly requested both in writing and orally, deposition dates for the depositions of Alicia Benting, Richard Benting, Martha Mahoney, John Mahoney and Elizabeth Ann Mahoney in the above-captioned case. Not only have I never been provided with any deposition dates, but recently Brandon Levine is unwilling to accept my telephone calls and seems to take the attitude that he can respond whenever he wishes. We have a discovery cutoff in this case in March of 2008 and as of January 11 no depositions have been scheduled or conducted.

Third, on November 28, 2007 I received a copy of Plaintiffs' 26(a)(2) Statement in the above-captioned case. There were no curriculum vitae and no expert reports attached to the Statement. Approximately 45 days have now elapsed since Plaintiffs' 26(a)(2) Statement was filed in the above-captioned case and I still have not received a single expert report concerning individual causation in the above-captioned cases. In my letter of December 4, 2007, I not only repeated my request for deposition dates in the above-captioned case, but I also asked for specific information concerning your experts. In our more recent telephone conversation, you basically informed me that I already have the information referred to for Dr. Harris Busch, Dr. Richard J. Falk, etc. The fact that information or documents have been produced in a prior case does not relieve the plaintiff from producing that information in this specific case. Obviously, I don't want to receive multiple copies of information which I already have; however, you have given me no reference to the case in which the alleged videotaped deposition of Dr. Harris Busch was taken on May 15-16, 2001. If you produced this videotape to me previously, indicate the case in which it was produced and if that case has not been closed and destroyed, I will search for it.

With respect to Dr. Richard J. Falk, I recall having attended one deposition that Dr. Falk gave in a DES case. I cannot remember what case the deposition was taken in or the date of the deposition, and I do not have what you refer to as his "previously produced report and recent deposition." I can assure you that I have not attended any "recent deposition" of Dr. Falk.

On January 10, 2008, for the first time, I received the curriculum vitae of Dr. Brian M. Berger without any report. I presume that Dr. Brian M. Berger is your individual causation expert in each of these cases. Does this mean that in the future defendants can name experts by the deadline set forth in the Court's schedule but do not need to provide actual expert reports until they deem it appropriate? You also seem to take a very cavalier attitude toward the necessity of meeting the deadline for expert designations by actually providing reports by that date. If that is going to be the practice in the DES litigation, then it should apply to both plaintiffs' experts and defendants' experts.

Renee L. Robinson-Meyer, Esquire
January 11, 2008
Page 3

Also on January 10, 2008, I received for the first time a 2-page curriculum vitae for Philip G. Sullivan, M.D. I assure I had never heard of Dr. Sullivan before and had never seen his curriculum vitae before. You also sent me a 2-page report from Dr. Sullivan dated November 5, 2007. If you received this report on or about November 5, 2007, I don't know why it took until January 10, 2008 to provide me with a copy of the report. Having read the report, I wonder if Dr. Sullivan's report has anything to do with these cases. There is reference to the practices of Dr. Safon, who practiced at hospitals in the Longwood medical area. My review of the medical records in this case does not indicate that Dr. Safon examined or treated either of these Plaintiffs.

As of this time, approximately 45 days after the deadline for designating expert witnesses, Plaintiffs have provided no expert reports from any individual causation expert in the above-captioned case.

Finally, I do not have the information from James P. DellaVolpe, Harold B. Spahr, Louis A. Imbriano and John J. Hefferen; however, I have been assured that the testimony of these experts only relates to an attempt to identify Lilly as the manufacturer of the DES which the Plaintiffs' mother allegedly ingested during her pregnancy with the Plaintiffs. With this understanding, I will not press for further information concerning these four experts.

For the record, your clients' discovery responses do not adequately respond to Interrogatory Nos. 1, 4, 5, 6, 12, 13, 14, 15, 22, 23 and 25 that were propounded to your clients in the above-captioned case on behalf of Bristol-Myers Squibb Company. Furthermore, your clients' response to document requests and production of documents do not adequately respond to Request for Production Nos. 2, 3, 4, 5,7,8, 9, 11, 13, 14, 15 and 17 propounded on behalf of Bristol-Myers Squibb Company in the above-captioned case. At this late date in the litigation, it should be obvious that I want birth certificates of the Plaintiffs in all cases, and I want marriage certificates and divorce records for all Plaintiffs in all cases, and I want specific information identifying which health care provider, if any, has associated the Plaintiffs' injuries with alleged *in utero* DES exposure.

I must confess that the discovery difficulties in this case are not typical and, in most cases with your office, discovery has gone smoothly.

I look forward to hearing from you in response to this letter.

Sincerely,

Sidney G. Leech

SGL/sls
cc:     All Counsel of Record

**Exhibit 3**

| From: | Henninger, Brian |
| Sent: | Monday, January 14, 2008 5:11 PM |
| To: | 'aaronlevinelaw@aol.com' |
| Cc: | Rodriguez, Erica |
| Subject: | Mahoney/Benting -- Berge Deposition |

Renee: I think Erica may have requested deposition dates for Drs. Berger and Sullivan in this case, but am not positive so I thought I would write.  We would like to depose Drs. Berger and Sullivan sometime after plaintiffs' depositions on 2/19, but before close of discovery in March.  If you give me some dates, I will coordinate with co-defendants.

Thanks,
--Brian

_____

Brian Henninger
Foley Hoag LLP / 155 Seaport Blvd. / Boston, MA 02210
Direct: 617-832-3061 / Main: 617-832-1000 / Fax: 617-832-7000
E-mail: bhenninger@foleyhoag.com

**Exhibit 4**

**From:**      Rodriguez, Erica
**Sent:**      Friday, March 07, 2008 4:25 PM
**To:**        'aaronlevinelaw@aol.com'
**Subject:**   Mahoney/Benting - Deposition of Dr. Berger

Dear Renee:

I got your voicemail regarding the deposition of Dr. Brian Berger regarding both plaintiffs.  You say the earliest he is available is March 27th, however, Jim is out of town that day so it will not work for us.  Please try to find an alternate date.

Thank you,
Erica Rodriguez


Erica Rodriguez
Litigation Case Assistant
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
Phone: 617-832-7122
Fax: 617-832-7000
erodriguez@foleyhoag.com

**Exhibit 5**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAURA DAY QUINE                    )
                                   )
            Plaintiff              )
                                   )        CIVIL ACTION No: 04-0684
        v.                         )               (CCK/AK)
                                   )
ELI LILLY AND COMPANY              )
                                   )
            Defendant              )
                                   )

## PLAINTIFF'S MOTION TO TRANSFER TO
## THE DISTRICT OF CONNECTICUT

COMES NOW the plaintiff, by and through counsel, and moves the Court,

pursuant to 28 U.S.C, Sec. 1404(a), to transfer this case to the District of Connecticut,

and as grounds therefore state:

1. The Connecticut Statute of Repose, Conn. Code §52-577a has recently been raised

   by the Defendant as a complete bar to the Plaintiff's cause of action.  Defendant's

   Motion for Summary Judgment and plaintiff's opposition filed herein, require

   interpretation of Connecticut case law determining the effect of this unique

   legislation.

2. A Connecticut court, which would be more familiar with and deals with

   Connecticut precedent on a daily basis, is in a better position to interpret the cases

   and its application to the instant case.

3. As the United States Supreme Court remarked:

> …..[A court] is reluctant to substitute its own view of state law for that of a judge who is familiar with that state's law and practices. In this case, the court concluded that the opinion of a district judge with 181/2 years of experience as a trial judge was entitled to some appellate experience.

> Salve Regina College v. Russell, 499 U.S. 225, 241 (1994)

> In dealing with issues of state law that enter into judgments of federal courts, we are hesitant to overrule decisions by federal courts skilled in the law of particular states unless their conclusions are shown to be unreasonable…..
> We pay great deference to the views of the judges of those court who are familiar with the intricacies and trends of local law and practice…. In the absence of such guidance, we shall leave undisturbed the interpretation placed upon purely local law…. by a… federal judge of long experience…

> Bishop v. Wood, 426 U.S. 341, 346 (1976)

4.  No prejudice will result to the defendant by transfer to Connecticut.

5.  Defendant cannot argue a request to transfer was done at a late stage of the proceedings. A week after defendant filed their Motion on June 21, 2005, plaintiff's counsel wrote to defense counsel and requested their consent to transfer "we believe a Connecticut judge is better able to interpret [Connecticut] repose and its exceptions." Defense counsel stated "I will take a look at it and get back to you." (See copy of plaintiff counsel's June 21, 2005 email and defense counsel's response email of June 22, 2005, attached hereto as Appendix No. 1). However, the defense never responded. This is equivalent to a denial.

6.  This court, during the pendency of a Motion for Summary Judgment in another DES case interpreting a foreign Statue of Repose, asked whether the case better belonged in the home forum to interpret a Statute of Repose. (See this Court's

April 6, 2005 Order in *Galvin v. Eli Lilly and Co.*, No. 03-1797 (D.D.C.). The same rationale is applicable to the instant case.

Respectfully submitted,
AARON M. LEVINE & ASSOCIATES

/s/ Aaron M. Levine
Aaron M. Levine, #7864
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040

Counsel for Plaintiff

## RULE 7(m) CERTIFICATION

Pursuant to local rule 7(m), counsel for Plaintiff conferred with counsel for Defendant, and hereby certifies consent to the relief sought in the Motion was requested of and denied by counsel for Defendant Lilly.

/s/ Aaron M. Levine
AARON M. LEVINE, #7864

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAURA DAY QUINE | ] | |
| | ] | |
| **Plaintiff** | ] | |
| | ] | **CIVIL ACTION No: 04-0684** |
| **v.** | ] | **(CCK/AK)** |
| | ] | |
| ELI LILLY AND COMPANY | ] | |
| | ] | |
| **Defendant** | ] | |
| | ] | |

## PLAINTIFF'S POINTS AND AUTHORITIES IN SUPPORT
## OF MOTION TO TRANSFER TO THE DISTRICT OF CONNECTICUT

1.    28 U.S.C. § 1404(a).

2.    Conn. Code §540.4

3.    Bishop v. Wood, 426 U.S. 341, 346 (1976).

4.    Galvin v. Eli Lilly and Co., No. 03-1797 (D.D.C. April 6, 2005)

5.    Salve Regina College v. Russell, 499 U.S. 225, 241 (1994).


Respectfully submitted,


        /s/ Aaron M. Levine
Aaron M. Levine, #7864
Aaron M. Levine & Associates, P.C.
Sunderland Place, Suite 500
1320 19th Street, N.W.
Washington, D.C.  20036
(P):  202-833-8040
(F):  202-833-8046

ATTORNEY FOR PLAINTIFF

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LAURA DAY QUINE** | ] | |
| | ] | |
| **Plaintiff** | ] | |
| | ] | **CIVIL ACTION No: 04-0684** |
| **v.** | ] | **(CCK/AK)** |
| | ] | |
| **ELI LILLY AND COMPANY** | ] | |
| | ] | |
| **Defendant** | ] | |
| | ] | |

**ORDER**

**UPON CONSIDERATION** of Plaintiff's Motion to Transfer to the District of

Connecticut, it is on this _____ day of _____, 2005,

    **ORDERED**, that Plaintiff's Motion be, and hereby, is GRANTED, and that this case

shall be transferred to the United States District Court for the District of Connecticut, Hartford

Division.

_____

Honorable Colleen Kollar-Kotelly, U.S.D.J., D.C.

**Exhibit 6**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHARINE LAGOR, et al.

Plaintiffs,

v.

ELI LILLY AND COMPANY, et al.

Defendants.

Civil Action No.  06-1967(JDB)

## ORDER

Upon consideration of [16] plaintiffs' motion to transfer this case to the U.S. District Court for the District of Massachusetts, [17] defendant Eli Lilly and Company's motion to transfer this case to the U.S. District Court for the District of Rhode Island, the oppositions and replies thereto, and the entire record herein, and for the reasons stated in the Memorandum Opinion issued on this date, it is this 18th day of June, 2007, hereby

**ORDERED** that plaintiffs' motion to transfer is **DENIED**; and it is further

**ORDERED** that defendant's motion to transfer is **GRANTED**, and this case is hereby **TRANSFERRED** to the U.S. District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1404(a).

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: June 18, 2007

-1-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHARINE LAGOR, et al.

Plaintiffs,

v.

ELI LILLY AND COMPANY, et al.

Defendants.

Civil Action No. 06-1967(JDB)

## MEMORANDUM OPINION

Plaintiffs Katharine Lagor and Timothy Lagor bring this products-liability action individually and on behalf of their minor daughter, Emily Grace Lagor, against defendant Eli Lilly and Company for injuries allegedly sustained as a result of Katharine Lagor's in utero exposure to diethylstilbestrol ("DES"). Both parties now move to transfer this action to a different venue pursuant to 28 U.S.C. §1404(a). Plaintiffs seek transfer to the U.S. District Court for the District of Massachusetts, while defendants seek transfer to the U.S. District Court for the District of Rhode Island. Upon consideration of the parties' submissions, and for the reasons set forth below, the Court will grant defendant's motion and deny plaintiffs' motion, and accordingly this case will be transferred to the District of Rhode Island.

## BACKGROUND

The parties agree as to the central facts relevant to the disposition of their respective motions to transfer. Plaintiffs reside in Seekonk, Massachusetts -- a town located approximately five miles from the Massachusetts-Rhode Island border. Plaintiff Katharine Lagor's mother,

-1-

Barbara Fahey, also lives in Seekonk. While pregnant with Katharine, Fahey was prescribed DES by her physicians in Providence, Rhode Island. Fahey purchased DES at a pharmacy in Rumford, Rhode Island and ingested the drug at her home in Seekonk. Fahey gave birth to plaintiff Katharine Lagor in Providence, Rhode Island in 1955.[*] As a result of her embryonic DES exposure, Katharine allegedly sustained cervical incompetency and was rendered incapable of carrying a child to full term. Consequently, Katharine's daughter, Emily Grace Lagor, was born prematurely and now suffers from cerebral palsy.

Like her mother, Emily Grace Lagor was born in Providence, Rhode Island. All but one of the physicians identified as having diagnosed or treated Emily Grace and Katharine Lagor for their alleged DES-related injures are located in Rhode Island. Emily Grace has been hospitalized once in Boston, Massachusetts, and numerous times throughout Rhode Island. The operative facts of this case are thus connected to both the state of Rhode Island and the state of Massachusetts. Plaintiffs concede that this case has no connection to the District of Columbia "beyond that the Defendants conduct or have conducted significant business there." Pls.' Mot. to Transfer at 2.

## ANALYSIS

28 U.S.C. §1404(a) authorizes a district court to transfer any civil action to any other district where it originally might have been brought "[f]or the convenience of parties and

---

[*] Contrary to plaintiffs' assertion that Katharine Lagor was born in Seekonk, Massachusetts, see Pls.' Mem. in Supp. of Mot. to Transfer ("Pls.' Mem.") at 1, Katharine Lagor identifies her place of birth as Providence, Rhode Island. See Def's. Exh. 2 (Katharine Lagor's Answers to Interrogatories) at 2, No. 1.

witnesses, [and] in the interest of justice." A party moving to transfer under 28 U.S.C. §1404(a)

bears the burden of establishing (1) that the plaintiff initially could have brought the action in the

proposed transferee district, and (2) that considerations of convenience and the interests of justice

weigh in favor of transfer. See Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89,

92 (D.D.C. 2005); see also Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C.

1996). Plaintiffs do not dispute that they could have brought this suit in the District of Rhode

Island, nor do defendants dispute plaintiffs' contention that suit could have been filed in the

District of Massachusetts. Subject-matter jurisdiction, personal jurisdiction, and venue would be

proper in both states. Because plaintiffs and defendants have both met the threshold requirement

for transfer under §1404(a), the Court must assess whether either party has satisfied its burden of

showing that considerations of convenience and the interests of justice support transfer to the

District of Massachusetts or to the District of Rhode Island.

Section §1404(a) grants district courts broad discretion "to adjudicate motions to transfer

according to 'an individualized, case-by-case consideration of convenience and fairness.'"

Stewart Org., Inc v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376

U.S. 612, 622 (1964)). Specifically, courts weigh a number of "private-interest" and "public-

interest" factors in order to evaluate whether transfer is warranted in a particular case. Trout

Unlimited, 944 F. Supp. at 16. The private-interest considerations include: (1) the plaintiff's

choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4)

the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that

the witnesses may be unavailable for trial in one of the fora; and (6) the ease of access to the

sources of proof. Id. (citations omitted). The public-interest considerations include: (1) the

transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in adjudicating local controversies at home.  Id.

## A. Private-Interest Factors

Here, the private-interest factors weigh in favor of transfer to the District of Rhode Island. With respect to the first private interest factor -- the plaintiff's choice of forum -- courts have recognized that the deference generally given to a plaintiff's choice of forum is reduced when the chosen forum is not the plaintiff's home forum, see Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981); Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001), or when the chosen forum has "no factual nexus with the lawsuit," Schmid Labs., Inc. v. Hartford Acc. & Indem. Co., 654 F. Supp. 734, 737 (D.D.C. 1986).  The showing a defendant must make to justify transfer is further diminished where transfer is sought to a "forum with which plaintiffs have substantial ties and . . . the subject matter of the lawsuit is connected." Trout Unlimited, 944 F. Supp. at 17.  Thus, in a DES case similar to this one, another judge in this district granted the defendant's motion to transfer from the District of Columbia both because the case was substantially connected to the transferee forum and because the District of Columbia had "no such connection" to the case.  Thompson v. Eli Lilly and Co., Civ. A. No. 03-122, slip. op. at 5 (D.D.C. June 27, 2003).  Just like in Thompson, the only link between the present case and the District of Columbia is that Eli Lilly has conducted significant business in the District.  Plaintiffs Katharine and Emily Grace Lagor were born in Rhode Island, all but one of plaintiffs' physicians are located in Rhode Island, and Barbara Fahey purchased and was prescribed DES in Rhode Island.  Because the District of Columbia was not plaintiffs' home forum to begin with -- nor the

-4-

situs of any of the facts giving rise to this specific cause of action -- plaintiffs' initial choice of forum merits little deference.

Several district courts have also recently held that where a plaintiff herself seeks transfer, the plaintiff's "second or third choices of forum receive[] no deference." Health Discovery Corp. v. Ciphergen Biosystems, Inc., Civ. A. No. 06-260, 2007 WL 128283, at *3 (E.D. Tex. Jan. 11, 2007) (emphasis added); see also Tiffany v. Hometown Buffet, Inc., Civ. A. No. 06-2524, 2006 WL 2792868, at *2 (N.D. Cal. Sept. 28, 2006). Although the record does not disclose plaintiffs' motivations for initially filing suit in the District of Columbia and then requesting transfer to the District of Massachusetts four months later (rather than bringing suit in Massachusetts originally), the Supreme Court has warned against allowing parties to use motions to transfer as veiled means of forum shopping. See Van Dusen, 376 U.S. at 636 (stating that §1404(a) was intended as a "judicial housekeeping measure" rather than a "forum-shopping instrument"); see also Schmid Labs, 654 F. Supp. at 737 (stating that "the transfer provisions in the U.S. Code . . . were in part intended to prevent forum shopping"); Tiffany, 2006 WL 2792868, at *2 (denying plaintiffs' motion to transfer where filing suit in one jurisdiction and then moving to transfer was indicative of forum shopping). Regardless of whether, as defendants urge, plaintiffs' decision to sue in this district constituted a strategic attempt to avail themselves of the District of Columbia's "advantageous statute of limitations," see Def.'s Mem. in Supp. of Mot. to Transfer ("Def.'s Mem.") at 5, or reflected more practical concerns (such as the presence of plaintiffs' counsel here), this Court accords no weight to plaintiffs' second-choice forum.

The remaining private-interest factors likewise favor transferring the present action to the District of Rhode Island. First, there is a substantial nexus between defendants' forum choice and

-5-

the facts of this case. As another member of this Court recently explained in <u>Dean v. Eli Lilly &</u> <u>Co.</u>, Civ. A. No. 06-1375, 2007 WL 1589496, at *2 (D.D.C. June 1, 2007), "the issues of whether the plaintiffs were exposed to Eli Lilly's product, the extent of the plaintiffs' injuries, and causation all center around Eli Lilly's sale of DES" -- a sale that, in this case, occurred in Rhode Island.

The third private-interest factor the Court considers -- where the claim arose -- also leans in favor of transfer to Rhode Island. Not only was the DES prescribed to Fahey in Rhode Island, but she also purchased the drug and gave birth to her daughter Katharine there as well. Both Katharine and Emily Grace Lagor received diagnoses and treatment for their alleged DES-related injuries almost exclusively in Rhode Island. Although plaintiffs claim that Fahey's ingestion of DES in Massachusetts serves to make Massachusetts the place of the plaintiffs' injuries, <u>see</u> Pls.' Mem. at 6, and thus the site where their claims arose, plaintiffs have failed to cite any case where the mere fact of DES ingestion in a state warranted transfer to that state. Rather, in all of the cases cited by plaintiffs, the site of ingestion was <u>also</u> the site of the DES prescription, purchase, and usually, the birth of the afflicted child. <u>See</u> <u>Thompson</u>, Civ. A. No. 03-122, slip op. at 2 (finding site where DES was prescribed, purchased, and ingested to be location giving rise to plaintiffs' claims); <u>see also</u> <u>Dean</u>, 2007 WL 1589496, at *3 (plaintiffs' claims arose in Massachusetts because the alleged prescription, purchase, and exposure to DES occurred in that state); <u>Clayton v. Eli Lilly & Co.</u>, 421 F. Supp. 2d 77, 80 (D.D.C. 2006) (operative events regarding DES claim include not only site of DES ingestion and <u>in utero</u> exposure, but also place where DES prescription was filled). Moreover, even though Massachusetts was the technical site of plaintiff Katharine Lagor's injuries, Rhode Island remains the place of plaintiff Emily Grace

-6-

Lagor's injuries, since they occurred not during in utero DES exposure in Massachusetts, but from a premature birth in Rhode Island. Thus, the clear majority of the material events that constitute the factual basis of plaintiffs' claims occurred in Rhode Island.

While plaintiffs argue that the fourth private-interest factor -- the convenience of the parties -- warrants transfer to Massachusetts, the Court does not find this factor dispositive. By initially filing suit in the District of Columbia, plaintiffs made clear their willingness "to forego the convenience of a geographically nearby forum." Dean, 2007 WL 1589496, at *3. In addition, defendants correctly point out that plaintiffs' hometown of Seekonk, Massachusetts is actually fifty miles closer to the federal courthouse in Providence, Rhode Island than to their requested federal courthouse in Boston, Massachusetts. See Def.'s Mem. at 8. The Court further notes that the parties' desired forums are in relatively close proximity, thereby minimizing any inconvenience to plaintiffs that could result from a transfer to Rhode Island as opposed to a transfer to Massachusetts. Although both parties are represented by counsel in the District of Columbia, the location of counsel "bears little, if any, weight in a court's determination of whether to transfer under §1404(a)." Dean, 2007 WL 1589496, at *3 n.1 (citing McClamrock v. Eli Lilly & Co., 267 F. Supp. 2d 33, 40 (D.D.C. 2003)).

Not only will transfer to Rhode Island result in minimal, if any, inconvenience to the parties, but "the most critical factor to examine under 28 U.S.C. §1404(a) is the convenience of the witnesses," not the convenience of the parties. Chung v. Chrysler Corp., 903 F. Supp. 160, 164 (D.D.C. 1996); see also Abramson v. Eli Lilly & Co., Civ. A. No. 03-2541, slip. op. at 3 (D.D.C. 2004). An examination of the potential witnesses in this case demonstrates that the lawsuit best belongs in the District of Rhode Island. The central issues relevant in a DES

-7-

products liability/personal injury action are "questions of exposure, product identification, and the nature and extent of [the plaintiffs'] alleged injuries." Thompson, Civ. A. No. 03-122, slip op. at 4 n.1. Aside from deposing the plaintiffs, the resolution of these issues will involve deposing Barbara Fahey, Fahey's prescribing physicians and pharmacists, as well as the physicians who have diagnosed and treated plaintiffs Katharine and Emily Grace Lagor for their alleged DES-related injuries. As plaintiffs admitted in their interrogatory responses, both of Fahey's prescribing physicians, all of Katharine Lagor's named physicians, and all but one of Emily Grace Lagor's physicians are located in Rhode Island. See Def.'s Exh. 2 at 3-7, Nos. 7, 9, 10, 11, 17; Def.'s Exh. 3 (Emily Grace Lagor's Answers to Interrogatories) at 2-3, No. 5. The pharmacy where Fahey filled her DES prescription is also located in Rhode Island. See Def.'s Exh. 2 at 8-9, No. 20. By contrast, there are no essential non-party witnesses in the District of Columbia, and only two potential non-party witnesses in Massachusetts (one of Emily Grace Lagor's seven identified physicians and Fahey herself). Although all of the potential witnesses are within the subpoena power of both Massachusetts and Rhode Island, the vast majority are located in Rhode Island, and consequently, transfer to Rhode Island will be the most convenient for the greatest number of potential witnesses. Finally, transfer to Rhode Island will best facilitate access to sources of proof, given that almost all of the relevant medical and pharmaceutical records are located there.

**B. Public-Interest Factors**

        In addition to the private-interest factors weighing in favor of transfer, the relevant public-interest factors also suggest that this case should be transferred to Rhode Island. The first such factor that this Court considers is the proposed transferee district's familiarity with the

governing law. Courts agree that the public interest is "best served by having a case decided by

the federal court in the state whose laws govern the interests at stake." Trout Unlimited, 944 F.

Supp. at 19; see also Schmid Labs, 654 F. Supp. at 737 n.11. Although the issue has not yet been

resolved, Rhode Island substantive law will most likely govern this case. Under the District of

Columbia choice of law analysis for tort actions, a court must consider four factors to determine

which state's substantive law will apply: (1) the place where the injury occurred; (2) the place

where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of

incorporation and place of business of the parties; and (4) the place where the relationship

between the parties, if any, is centered. See Herbert v. District of Columbia, 808 A.2d 776, 779

(D.C. 2002) (citing Restatement (Second) of Conflict of Laws §145 cmt. d (1971)). The Court

evaluates these factors for the ultimate purpose of determining which jurisdiction has the most

significant relationship to the dispute. See Jaffe v. Palotta Teamworks, 374 F.3d 1223, 1227

(D.C. Cir. 2004); see also Clayton, 421 F. Supp. at 80; Bortell v. Eli Lilly & Co., 406 F. Supp. 2d

1, 5 (D.D.C. 2005).

　　　　In this case, Rhode Island has the most significant relationship to the parties' dispute.

Although plaintiffs reside in Massachusetts and Katharine Lagor's injuries technically "occurred"

in Massachusetts (since the place of injury in DES cases is the location of in utero DES exposure,

see, e.g., Dean, 2007 WL 1589496, at *4; Bortell, 406 F. Supp. 2d at 5), Emily Grace Lagor's

alleged injuries occurred in Rhode Island. Concretely, Emily Grace Lagor was harmed not when

her grandmother ingested DES in Massachusetts in 1954-55, but instead, when she was born

prematurely in Rhode Island in 1990. Rhode Island is also the place where most of the conduct

causing both of the plaintiffs' injuries occurred -- and where the relationship between the parties

-9-

is centered. Barbara Fahey was prescribed DES by a doctor in Rhode Island and she purchased

DES from a pharmacy in Rhode Island. The mere fortuity that ingestion of the drug, the "last act

necessary to cause plaintiff's injuries," Bortell, 406 F. Supp. at 5, occurred in Massachusetts does

not negate the fact that most of the operative events giving rise to the plaintiffs' injuries

transpired in Rhode Island. See Clayton, 421 F. Supp at 80 (stating that place where DES

prescription was filled is a relevant factor in assessing where conduct causing plaintiffs' injuries

occurred); Bortell, 406 F. Supp. at 5 (examining not only place where DES was ingested, but also

place where DES was prescribed and dispensed to determine where conduct causing plaintiffs'

injuries occurred).

    Also favoring Rhode Island as a venue is the principle that a plaintiff's residence and

place of injury -- although both relevant in choice-of-law analyses -- are by no means dispositive

where most of the conduct leading to the injury occurred elsewhere. See Long v. Sears Roebuck

& Co., 877 F. Supp. 8 (D.D.C. 1995). The court in Long found that District of Columbia law

applied to a products liability action stemming from an accident involving a Maryland resident

that had occurred in Maryland, since the conduct leading to the injury (that is, "the sale of the

allegedly defective product") occurred in the District of Columbia, the "seller-purchaser

relationship" between the parties was centered in the District of Columbia, and the defendants'

"alleged misrepresentation" as to the safety of their product occurred in the District of Columbia.

Id. at 12. Just as in Long, the conduct causing plaintiffs' injuries in this case -- the prescription

and sale of the DES -- occurred in Rhode Island, the seller-purchaser relationship between the

parties was consummated at a pharmacy in Rhode Island, and any alleged misrepresentation

made by Eli Lilly to the plaintiffs' physicians and pharmacists also occurred in Rhode Island

-10-

(where they were located). Hence, while Massachusetts certainly has an interest in the present

litigation because it is the site of plaintiff Katharine Lagor's injuries and plaintiffs' place of

residence, Rhode Island has a more significant interest in plaintiffs' claims and, consequently, its

substantive law will probably apply to this case. Because a Rhode Island court is best qualified

to apply its own law, plaintiffs' claims should be heard in Rhode Island.

The second public-interest factor -- the relative docket congestion in the transferor and

transferee forums -- also points towards transfer to Rhode Island. As this Court explained in

Abramson, Civ. A. No. 03-2541, slip op. at 4-5, "given the very minimal connection of this

lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and

its limited resources . . . with this case." Not only is Rhode Island's court calendar less congested

than the court calendar of the District of Columbia, but it is also less congested than the court

calendar of Massachusetts. See James C. Duff, 2006 Annual Report of the Director of the United

States Courts, App. C5 & C10, http://www.uscourts.gov/judbus2006/appendices/c5.pdf;

http://www.uscourts.gov/judbus2006/appendices/c10.pdf. Moreover, since discovery in this case

has just begun -- and the Court has not yet familiarized itself with the underlying merits of the

plaintiffs' claims -- there would be relatively little delay associated with transfer to Rhode Island.

Finally, transfer to Rhode Island will support the compelling public interest in having

controversies resolved in the locale where they arise. Although Massachusetts undoubtedly has

an interest in adjudicating the personal injury claims of its own citizens, see, e.g., Dean, 2007

WL 1589496, at *5; Lentz v. Eli Lilly and Co., 464 F. Supp. 2d 35, 38 (D.D.C. 2006), Rhode

Island has an even greater interest in adjudicating DES cases in which the alleged prescription of

DES, sale of DES, and birth of the afflicted individuals all occurred within its borders.

-11-

## CONCLUSION

For the foregoing reasons, defendants' motion to transfer this case to the U.S. District Court for the District of Rhode Island pursuant to 28 U.S.C. §1404(a) is granted, and plaintiffs' motion to transfer this case to the U.S. District Court for the District of Massachusetts is denied. A separate order has been posted on this date.

_____/s/_____

JOHN D. BATES
United States District Judge

Dated:   June 18, 2007

-12-

**Exhibit 7**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIMBERLY MCKELVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1820 (RMC) |
| ) | |
| ELI LILLY AND COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

     This is a products liability personal injury case arising from Plaintiff Kimberly

McKelvey's alleged in utero exposure to diethylstilbestrol ("DES") manufactured by Eli Lilly and

Company ("Lilly"). Lilly moves to transfer this case to U.S. District Court for the Central District

of California because it would be more convenient for the parties and the witnesses and because this

case has no factual nexus to the District of Columbia. Despite Ms. McKelvey's opposition to the

motion, the motion will be granted.

     Section 1404(a) authorizes a court to transfer a civil action to any other district where

it could have been brought "for the convenience of parties and witnesses, in the interest of justice

. . ." 28 U.S.C. § 1404(a). Section 1404(a) vests "discretion in the district court to adjudicate

motions to transfer according to individualized, case-by-case consideration of convenience and

fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*,

376 U.S. 612, 622 (1964)). The moving party bears the burden of establishing that transfer is proper.

*Trout Unlimited v. Dep't. of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Accordingly, Lilly must

make two showings to justify transfer. First, Lilly must establish that Ms. McKelvey originally could

have brought the action in the Central District of California. *See Van Dusen*, 376 U.S. at 622-23.

Second, Lilly must demonstrate that considerations of convenience and the interest of justice weigh

in favor of transfer to the California court. *See Trout Unlimited*, 944 F. Supp. at 16.

Ms. McKelvey concedes that this action could have been brought in California, Pl.'s

Mem. at 2, but she contends that the private and public interest factors do not weigh in favor of a

transfer. The private interest considerations include: (1) the plaintiff's choice of forum, unless the

balance of convenience is strongly in favor of the defendants; (2) the defendant's choice of forum;

(3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the

witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the

fora; and (6) the ease of access to sources of proof. *Trout Unlimited*, 944 F. Supp. at 16 (citing

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). The public interest considerations

include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the

calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local

controversies at home. *Id.*

A plaintiff's choice of forum is entitled to deference, "except when the plaintiff is a

foreigner in that forum." *Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d

21, 31-32 (D.D.C. 2002). "[W]hile the plaintiff's choice of forum is generally entitled to deference,

where the forum choice has no factual nexus with the lawsuit, plaintiff's choice of forum may be

accorded less weight in a section 1404(a) analysis . . . . In fact, the presumption may switch to

Defendant's favor when neither party resides in the chosen forum and the cause of action arose

elsewhere." *Abbott Labs. v. U.S. Fid. & Guar. Co.*, No. 88-2232, 1989 WL 5557, *2 (D.D.C. Jan.

10, 1989) (citations and internal quotation marks omitted); *see also Boers v. U.S.*, 133 F. Supp. 2d

2

64, 65 (D.D.C. 2001) (court should give plaintiff's choice of forum substantially less deference when the forum plaintiff prefers is not his home forum); *Trout Unlimited*, 944 F. Supp. at 17 (deference to plaintiff's choice of forum is mitigated where plaintiff chose a forum with no factual nexus to the case and transfer is sought to a forum with ties to plaintiff and the subject matter of the lawsuit).

Ms. McKelvey does not reside in the District of Columbia and this case did not arise here. Ms. McKelvey resides in Santa Clarita, California. The events that gave rise to this case — the prescription, purchase, and ingestion of DES and Ms. McKelvey's in utero exposure to DES — all occurred in California. Because Ms. McKelvey does not reside here and the District of Columbia has no factual nexus to this case, Ms. McKelvey's choice of forum is given little deference.

Further, private interest considerations compel the transfer of this case to California, a forum with a substantial connection to this case. Ms. McKelvey and her mother both reside in California. Also, Ms. McKelvey's diagnosing and treating doctors are located in California. No witnesses that have been identified thus far are located in D.C. *Accord* Def's Mem. Ex. B, *Abramson v. Eli Lilly & Co.*, No. 03-2541, *4 n.6 (D.D.C. Oct. 25, 2004) (DES case transferred to N.J. because plaintiff and her parents resided in N.J. and the prescribing and treating physicians practiced there; D.C. had no connection to the case); Def's Mem. Ex. A, *Thompson v. Eli Lilly and Co.*, No. 03-122 (June 27, 2003) (DES case transferred to Mass. because plaintiff, her mother, all of the treating physicians, and all of the fact witnesses resided there; D.C. had no factual nexus with the case).

Ms. McKelvey also asserts that the District of Columbia bears a factual nexus to this case based on a May 13, 1941 letter from Lilly regarding lobbying and DES drug applications. Pl.'s Mem. at 8 n.2. Ms. McKelvey's suit alleges DES exposure in 1971. The 1941 letter's connection

3

to this case is so attenuated that it does not establish a factual nexus with this forum. *Accord* Def's

Mem. Ex. B, *Abramson*, No. 03-2541 at *4 n.6 (lobbying efforts in 1941 did not tie case to D.C.).

In addition, non-party witnesses that have been identified are within the subpoena

power of the Central District of California and are not within the subpoena power of this Court.

Generally, a subpoena may be served within the district or within 100 miles. Fed. R. Civ. P.

45(b)(2). Ms. McKelvey also asserts that she will voluntarily provide non-party witnesses for

deposition upon oral request and that subpoenas will not be necessary. Unfortunately, Ms.

McKelvey cannot guarantee the cooperation of non-party witnesses. Lilly is entitled to compel

testimony via subpoena if need be. A court's ability to compel the appearance of unwilling non-

party witnesses is an important factor in determining a motion to transfer. *DeLoach v. Phillip Morris*

*Cos., Inc.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000); *see Piper Aircraft v. Reyno*, 454 U.S. 235, 258-59

(1981) (finding that because many crucial witnesses were located overseas and therefore beyond the

reach of compulsory process, and because a large portion of the relevant evidence was located in

Great Britain, private interest factors weighed in favor of transferring venue).

Ms. McKelvey argues that she chose to file her suit in the District of Columbia

because she was unable to find counsel in California and because her counsel, who is based in

Florida, also practices in the District of Columbia. She also points out that her experts are all located

on the East Coast. These arguments are unavailing, as the inconvenience and expense to plaintiff's

counsel and to expert witnesses are of minor importance under § 1404(a). *Froessl v. Expervision*,

No. 93-2126, 1994 WL 149855, *2 & *4 (D.D.C. Apr. 14, 1994).

Public interest factors also weigh in favor of transfer. California is the forum that has

an interest in deciding this controversy. Not only is California the place where the cause of action

4

arose, it is also likely that under D.C.'s choice of law analysis California law applies. *See Jaffe v.*

*Pallotta Teamworks*, 374 F.3d 1223 (D.C. Cir. 2004) (discussing and applying D.C.'s choice of law

rules).  Moreover, it is inequitable to impose the burden of trying this case on the District of

Columbia and its limited resources when this District bears no connection whatsoever to the facts

of this case. *See* Def's Mem. Ex. B, *Abramson*, No. 03-2541 at *4-5 (when a case bears minimal

connection to D.C., it is not appropriate to burden this jurisdiction and its limited resources with the

suit).

For the foregoing reasons, Lilly's motion to transfer [Dkt. # 13] is **GRANTED**. This

case is **TRANSFERRED** to U.S. District Court for the Central District of California.

Date: April 12, 2007                                       /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge

5

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ELAINE CODY and**<br>**DAVID CODY**<br><br>           **Plaintiffs,**<br><br>    **vs.**<br><br>**ELI LILLY AND COMPANY,**<br><br>           **Defendant.** | )<br>)<br>)<br>)  **CIVIL ACTION NO.**<br>)  **1:07-cv-01887 (JR/AK)**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

    UPON CONSIDERATION of Defendant Eli Lilly and Company's Motion to

Transfer to the District of Massachusetts pursuant to 28 U.S.C. Section 1404(a),

        IT IS HEREBY ORDERED that Eli Lilly and Company's Motion is granted;

        IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. Section 1404(a), this

case is transferred to the United States District Court for the District of Massachusetts.


Dated: _____, 2008    _____

                                   The Honorable James Robertson


cc:    Appended list of counsel of record

1

<u>**COUNSEL OF RECORD**</u>

Aaron M. Levine
Aaron Levine & Associates
1320 19th St., N.W., Suite 500
Washington, D.C. 20036
**Attorneys for Plaintiff**

Michelle R. Mangrum, Esq.
Shook, Hardy & Bacon L.L.P.
600 14th Street, N.W., Suite 800
Washington, D.C.  20005-2004
**Attorneys for Defendant Eli Lilly and Company**

2

**Exhibit 8**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONNIE FRANCO PAVLICAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ELI LILLY AND COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

Civil Action No.: 07-1318 (HHK)
Next Event:

## PLAINTIFF'S MOTION TO TRANSFER TO
## THE EASTERN DISTRICT OF NEW YORK

COMES NOW Plaintiff Connie Franco Pavlicas, through counsel, and moves under 28 U.S.C. § 1404(a) to transfer this cause of action to the Eastern District of New York, and as grounds therefore states:

1.      This is a products liability and personal injury case for injuries sustained by Plaintiff including, but not limited to, uterine abnormalities as a result of her embryonic exposure to diethylstilbestrol ("DES").

2.      Plaintiff was born in New York and resided the first seventeen years of her life in Commack, New York, which is in the Eastern District of New York.

3.      Plaintiff's mother procured the DES in question from a doctor's office in New York City.

3.      From 1997 to 2005, Plaintiff suffered her injuries while living in various cities in the Eastern District of New York.

4.      Plaintiff's treating physicians for her injuries are all in New York, all but two are in the Eastern District of New York.

5.      Although Plaintiff is now a resident of California, Plaintiff filed this case when she was a New York resident.

1314543-2

6.    New York law applies to this case. All DES cases in the Eastern District of New York are handled by Judge Jack Weinstein, who has adjudicated hundreds of DES cases involving New York law. The Eastern District of New York is a more appropriate jurisdiction to determine New York decisional law.

7.    This case was removed to this Court on July 20, 2007.

8.    At the time this case was removed, discovery was about to close. Defendant Eli Lilly and Company has noted depositions of two of Plaintiff's treating physicians from the Eastern District of New York. Any federal court hearing this case will be hearing it for little more than pretrial motions and trial.

9.    The facts adduced during discovery demonstrate that the District of Columbia's contacts with this case are not as strong as the contacts clustered in the Eastern District of New York.

WHEREFORE, for the above reasons, the reasons stated in the attached Memorandum of Points and Authorities, and for good cause shown, Plaintiff respectfully requests that this action be transferred to the Eastern District of New York.

Respectfully submitted,

/s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

Counsel for Plaintiff

2

## LCvR 7.1(m) CERTIFICATION

Plaintiff requested consent for this motion from defendants Eli Lilly and Company, Person & Covey, GlaxoSmithKline, and Mallinckrodt. Defendants Lilly, GlaxoSmithKline, and Mallinckrodt have refused consent. As of this date, counsel for Defendant Person & Covey has not responded to Plaintiff's request.

_____/s/ Aaron M. Levine_____
Aaron M. Levine

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
CONNIE FRANCO PAVLICAS,                    )
                                           )
        Plaintiff,                         )
                                           )        Civil Action No.: 07-1318 (HHK)
    v.                                     )        Next Event:
                                           )
ELI LILLY AND COMPANY, et al.,             )
                                           )
        Defendants.                        )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HER MOTION TO TRANSFER TO
THE EASTERN DISTRICT OF NEW YORK**

## I.    INTRODUCTION

Plaintiff Connie Pavlicas brought this suit to compensate for infertility and other injuries

caused by Plaintiff's exposure *in utero* to diethylstilbestrol ("DES") in the state of New York.

New York is the most appropriate location for trial of this case, both for the convenience of the

witnesses and for the interests of justice.

For the vast majority of her life, Plaintiff and her mother lived in the Eastern District of

New York. <u>See</u> Plaintiff's Responses to Defendants' Uniform Requests for Information, pgs. 2-

3, attached as Appendix 1. Plaintiff was exposed to DES purchased and ingested in the state of

New York. <u>See</u> Plaintiff's Responses, pg. 6, App. 1. The majority of Plaintiff's diagnosing and

treating physicians practice in the Eastern District of New York; the remainder practice in New

York City, well within the subpoena power of the Eastern District. <u>See</u> Plaintiff's Responses,

pg. 7, App. 1. Plaintiff was a resident of the Eastern District of New York when she filed this

suit, and asserts claims under New York law. <u>See</u> Complaint, App. 2.

In <u>Albin v. Eli Lilly and Co.</u>, Civil Action No. 04-986 (D.D.C. July 30, 2004), attached as App. 3, the District Court for the District of Columbia granted a DES plaintiff's motion to transfer to the Eastern District of New York where the plaintiff's exposure and some of her medical treatment took place in New York, although the plaintiff was a Canadian resident. Here, Plaintiff's connection to New York is stronger than that in <u>Albin</u>; transfer therefore should be granted.

## II.    STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been brought. Plaintiff could have initially brought this suit in the Eastern District of New York. All defendants are corporations, which are deemed to reside in any district which can exercise personal jurisdiction over them. <u>See</u> 28 U.S.C. § 1391(c). A plaintiff may sue in any district that a defendant resides, if all defendants reside within a state. <u>See</u> 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area. Defendants either currently conduct significant business within the state to subject them to jurisdiction or are subject to jurisdiction by virtue of having committed a tortious act against Plaintiff in New York, <u>see</u> N.Y. C.P.L.R. § 302. As all Defendants are subject to jurisdiction, and therefore reside, in the Eastern District of New York, this case could be transferred there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have considered various other factors, including the private interests of the parties and the public interests of the court" in construing § 1404. <u>Trout Unlimited v. United States Dep't of Ag.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).

2

The private interest considerations include, but are not limited to the (1) plaintiff's choice of forum, (2) the defendants' choice of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof. Trout Unlimited, 944 F. Supp. at 16. The public interest considerations include (1) the familiarity of the transferee forum with the governing laws, (2) the relative congestion of the court calendars, and (3) the local interest in deciding local controversies at home. Id.

## III.    THE EASTERN DISTRICT OF NEW YORK IS MOST CONVENIENT FOR THE WITNESSES

The courts "must afford some deference" to Plaintiffs' choice of forum. Trout Unlimited, 944 F. Supp. at 17. Here, Plaintiffs elect to transfer; the weight of this factor is therefore not in favor of maintaining the present forum. When the current forum has few meaningful ties to or interest in a lawsuit, the court must be "especially cautious" in allowing a case to remain there. Trout Unlimited, 944 F. Supp. at 17. If the forum is not the plaintiff's home forum, and the injury and initial treatment occurred elsewhere, the balance of interests is in favor of transfer. Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 93 (D.D.C. 2005) (holding Maryland a more convenient forum where Texas residents were injured in Maryland and received treatment there). This is a New York products liability case where no parties are residents of the District of Columbia. The balance of interests favors transfer to a New York court.

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer. Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002), attached as App. 3. In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses

3

located in each district; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for the attendance of witnesses; and (5) the situs of the material events." 2002 U.S. Dist. LEXIS 759 at *6-7 (N.D. Ill. 2002). Here, there are no witnesses in the District of Columbia. Within the subpoena power of the Eastern District of New York are all witnesses and documents relevant to Plaintiff's medical treatment. For example, on August 16, 2007, Defendants will take the deposition of two of Plaintiff's treating physicians in the Eastern District of New York. See Amended Notice of Deposition of Burton Krumholz, M.D. App. 4; Amended Notice of Deposition of David L. Rosenfeld, M.D., App. 5. The Eastern District of New York is also the site of the material events involving these witnesses, including Plaintiff's medical treatment. The Eastern District of New York is the more convenient jurisdiction.

A witness's inconvenience is material when the inconvenience may make the witness unavailable to testify. Brannen, 403 F. Supp. 2d at 94. While Plaintiff's mother is not available for subpoena by either the District of Columbia or the Eastern District of New York, she will appear without subpoena; Plantiff's mother has already appeared in Washington, D.C. to be deposed by Defendants' counsel. Plaintiff's mother is therefore not inconvenienced by transfer to the Eastern District of New York.

Conversely, it will be more inconvenient to require Plaintiff's treating doctors to leave New York to testify in the District of Columbia. Should any of them need to be subpoenaed, this Court does not have the power to do so, unlike the Eastern District of New York.

## IV.    THE EASTERN DISTRICT OF NEW YORK IS THE MOST APPROPRIATE FORUM FOR THE INTERESTS OF JUSTICE

The Eastern District of New York is a much better forum regarding the local interest factors. "Controversies should be resolved in the locale where they arise." Trout Unlimited, 944

F. Supp. at 19. In a diversity case, the public interest factors weigh in favor of having a jury apply its local laws. See Brannen, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts who are familiar with the intricacies and trends of local law and practice . . .

Bishop v. Wood, 426 U.S. 341, 346 n. 10 (1976).

This Court has no close connection with this case. Although discovery is all but closed in this case, the case was removed July 20, 2007 and this Court has not yet occupied itself with the disposition of this case.

New York, the place of Plaintiff's exposure to DES, applies a market share theory to DES cases. See Hymowitz v. Eli Lilly, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of New York has extensive experience in applying New York law regarding DES cases. See, e.g., In re DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail in reference to consolidated DES litigation). The case would be assigned to Judge Jack Weinstein, who has a Standing Order referring all Eastern District DES cases to him. Judge Weinstein has extensive experience in handling DES cases. See In re DES Cases, supra. The Eastern District of New York is the best district to interpret the market share law underpinning this case.

## IV. CONCLUSION

The Eastern District of New York is a more appropriate venue for this case. It has subpoena power over witnesses and documents relevant to Plaintiff Connie Pavlicas's exposure to DES and has more experience with the governing law. Therefore, Plaintiff requests to transfer this case to the Eastern District of New York.

5

Respectfully submitted,


  /s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

Counsel for Plaintiff

6

**Exhibit 9**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RISE BAUSCH, et al., }
}
Plaintiffs, }
}
v. } Civil Action No. 07-1362 (RJL)
} Next Event:    Scheduling Conference
ELI LILLY AND COMPANY, et al., } November 5, 2007
}
Defendants. }

## PLAINTIFFS' MOTION TO TRANSFER
## TO THE EASTERN DISTRICT OF NEW YORK

COME NOW Plaintiffs, through counsel, and moves this court to transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a), and as grounds therefore state:

1. This is a birth defect and products liability suit stemming from Plaintiff Rise Bausch's *in utero* exposure to the drug diethylstilbestrol ("DES").

2. Recent investigation reveals that Rise Bausch was born in the North Country Community Hospital in Glen Cove, New York, in the Eastern District of New York.

3. Recent investigation reveals that Rise Bausch was exposed to DES *in utero* and injured in Levittown, New York. Her mother also was prescribed DES by a Levittown doctor and purchased DES at a pharmacy in Levittown. Levittown is also also in the Eastern District.

4. Defendants' failure to warn, misrepresentations, overpromotion, and breach of warranty regarding DES in this case all occurred in the Eastern District of New York.

1

5. As the DES warnings, purchase, ingestion, and injury in this case occurred in New York, New York law will apply to this case, and Plaintiff currently proceeds under New York's market share theory of liability.

6. While this case has some contacts with the District of Columbia (i.e., Defendants' fraud on the Food and Drug Administration), many more contacts exist in and around the Eastern District of New York. No witnesses reside within the District of Columbia.

WHEREFORE, for the foregoing reasons and for the reasons contained in Plaintiffs' attached memorandum, Plaintiffs respectfully request that this Court, in accordance with 28 U.S.C § 1404(a), enter an Order transferring this matter to the United States District Court for the Eastern District of New York.

Respectfully submitted,

/s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040
Fax: (202) 833-8046

Counsel for Plaintiffs

## LCvR 7.1(m) CERTIFICATION

Plaintiffs, through counsel, asked Defendants for consent to transfer. As of this date, Defendants refused consent to transfer.

/s/ Aaron M. Levine
AARON M. LEVINE, #7864

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RISE BAUSCH, et al.,                    }
                                        }
              Plaintiffs,               }
                                        }
      v.                                }      Civil Action No. 07-1362 (RJL)
                                        }      Next Event:    Scheduling Conference
ELI LILLY AND COMPANY, et al.,          }        November 5, 2007
                                        }
              Defendants.               }

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
## MOTION TO TRANSFER
## TO THE EASTERN DISTRICT OF NEW YORK

## I.    INTRODUCTION

Plaintiffs Rise Bausch and Joseph Bausch bring this suit to recover for damages due to

Plaintiff Rise Bausch's prenatal exposure to diethylstilbestrol ("DES"). Rise Bausch was born in

Glen Cove, New York; her mother purchased and ingested DES in Levittown, New York. New

York law will apply to her case.

No jurisdiction in this case is completely convenient for all witnesses and documents.

After investigation, it appears that Plaintiff Rise Bausch, although treated for her DES injuries in

New Jersey, Florida, and Utah, the center of this case is New York. It is New York where

Defendants failures to test or warn about DES led to the prescription of DES by a New York

physician to Rise Bausch's mother and the purchase of DES in a New York pharmacy.

## II.    STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been

brought. Plaintiffs could have initially brought this suit in the Eastern District of New York. All

defendants are corporations, which are deemed to reside in any district which can exercise

1

personal jurisdiction over them. <u>See</u> 28 U.S.C. § 1391(c). A plaintiff may sue in any district that a defendant resides, if all defendants reside within a state. <u>See</u> 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area. Defendants either currently conduct significant business within the state to subject them to jurisdiction or are subject to jurisdiction by virtue of having committed a tortious act against Plaintiff in New York, <u>see</u> N.Y. C.P.L.R. § 302. As all Defendants are subject to jurisdiction, and therefore reside, in the Eastern District of New York, this case could be brought there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have considered various other factors, including the private interests of the parties and the public interests of the court" in construing § 1404. <u>Trout Unlimited v. United States Dep't of Ag.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).

## III.    NEW YORK IS A MORE CONVENIENT FORUM

### A.    PUBLIC INTEREST FACTORS

"Controversies should be resolved in the locale where they arise." <u>Trout Unlimited</u>, 944 F. Supp. at 19; <u>see also</u> <u>Pain v. United Technologies Corp.</u>, 637 F.2d 775, 792 (D.C. Cir. 1980). In a diversity case, the public interest factors weigh in favor of having a jury apply its local laws. <u>See</u> <u>Brannen</u>, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts
> who are familiar with the intricacies and trends of local law and
> practice . . .

<u>Bishop v. Wood</u>, 426 U.S. 341, 346 n. 10 (1976). A state's interest in vindicating its laws and policies in local courts can only be overridden by "a great benefit." <u>Jackson v. Venture Dep't Stores</u>, No. 98 C 6216, 1998 U.S. Dist. LEXIS 17508 at *9 (N.D. Ill. Nov. 3, 1998). The Eastern District of New York is a much better forum regarding the public interest factors.

2

New York law applies to Rise Bausch's claims. This claim was filed in District of Columbia Superior Court, and therefore, District of Columbia choice of law applies to this action, wherever it may be transferred. See, e.g., Frankston v. Aura Systems, Inc., 1995 U.S. App. LEXIS 9006 at *3 (9th Cir. 1995) (applying Massachusetts conflicts law to a case transferred from Massachusetts to California). Generally, District of Columbia choice of law in products liability cases follows the place of purchase. See Long v. Sears Roebuck & Co., 877 F. Supp. 8, 13 (D.D.C. 1995) (applying District of Columbia law to the D.C. purchase by a Maryland resident). DES cases have placed significant importance on the location of the ingestion of DES and the resulting residence of the infant injured *in utero*. See Tidler v. Eli Lilly and Co., 851 F.2d 418, 420-21 (D.C. Cir. 1988) (stating that "the jurisdiction in which either their [the plaintiffs'] mothers were resident when they took DES or where the plaintiffs' injuries occurred" would be the usual jurisdictions whose law would apply). Since then, the location of the ingestion of DES has been a significant factor in DES cases. See Clayton v. Eli Lilly and Co., 421 F. Supp. 2d 77, 80 (D.D.C. 2006) (stating that the operative events regarding a DES injury as the filling of the prescription and the "use of the drug and plaintiff's *in utero* exposure to DES"); Bortell v. Eli Lilly and Co., 406 F. Supp. 2d 1, 5 (D.D.C. 2005) (holding that the place of injury is where the "malformation of plaintiff's uterus and cervix occurred").

During Rise Bausch's gestation, her mother lived in Levittown, New York. The failures to warn and misrepresentations by the Defendants that led to the prescription of DES to Plaintiff's mother occurred in New York. The reproductive abnormalities that give rise to this suit occurred to Rise Bausch in New York. New York has the prevailing interest in the wrongdoing in this case.

3

Furthermore, New York, the place of Plaintiff Rise Bausch's exposure to DES, applies a market share theory to DES cases. See Hymowitz v. Eli Lilly, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of New York has extensive experience in applying New York law regarding DES cases. See, e.g., In re DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail in reference to consolidated DES litigation). The case would be assigned to Judge Jack Weinstein, who has a Standing Order referring all Eastern District DES cases to him. Judge Weinstein has extensive experience in handling DES cases. See In re DES Cases, supra. The Eastern District of New York is the best district to interpret the market share law underpinning this case.

B.    NEW YORK IS A MORE CONVENIENT FORUM FOR WITNESSES AND SOURCES OF PROOF

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer. Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002), attached as App. 3. In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses located in each district; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for the attendance of witnesses; and (5) the situs of the material events." 2002 U.S. Dist. LEXIS 759 at *6-7 (N.D. Ill. 2002).

Here, there are no witnesses in the District of Columbia. This case has transactions and witnesses in multiple states, including New Jersey and Florida, but within the subpoena power of the Eastern District of New York are most witnesses and documents relevant to Plaintiff's exposure and medical treatment. Where any jurisdiction may burden witnesses, the weight of the factor of the convenience of the witnesses may be outweighed by the public interest factors. Jackson v. Venture Department Stores, Inc., No. 98 C 6216, 1998 U.S. Dist. LEXIS 17508 at *8 (N.D. Ill. 1998). When liability and damage witnesses are in different states, the balance of

4

convenience weighs in favor of the place where the claim arises.  See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).  The Eastern District of New York is the more convenient jurisdiction.

Defendants all have counsel in New York City, and the national counsel for Defendants Bristol-Myers Squibb Company, Premo Pharmaceutical Laboratories, and Elan Pharmaceuticals are all located in New York City.  The transfer of this case will make the case less burdensome for all the parties.

## IV. CONCLUSION

The Eastern District of New York is a more appropriate venue for this case.  It has subpoena power over witnesses and documents relevant to Plaintiff Rise Bausch's exposure to DES and has more experience with the governing law.  Therefore, Plaintiff requests to transfer this case to the Eastern District of New York.

Respectfully submitted,

/s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040
Fax: (202) 833-8046

Counsel for Plaintiffs

**Exhibit 10**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTOIRE DUMONT, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | Civil Action No.: 07-CV-01635 (JR/AK) |
| | ] | Next Event: Discovery Requests Due |
| THE ABBOTT LABORATORIES, INC., | ] | January 14, 2008 |
| et al., | ] | |
| | ] | |
| Defendant. | ] | |

**PARTIAL CONSENT MOTION TO TRANSFER TO
THE EASTERN DISTRICT OF NEW YORK**

COMES NOW Plaintiff Victoire Dumont, through counsel, with consent of Defendant

Elan Pharmaceuticals, and moves under 28 U.S.C. § 1404(a) to transfer this cause of action to

the Eastern District of New York, and as grounds therefore states:

1.    This is a products liability and personal injury case for injuries sustained by

Plaintiff including, but not limited to adenocarcinoma of the vagina and cervix and infertility, as

a result of her embryonic exposure to Diethylstilbestrol ("DES"), and its components.

2.    Plaintiff was born in France and has resided in Centerport, New York, which is in

the Eastern District of New York, since May 2004.

3.    Plaintiff suffered many of her injuries, including infertility, while living in

Centerport, New York in the Eastern District of New York.

4.    Plaintiff's currently treating physician is in New York.  In addition, a number of

other physicians who have examined Plaintiff for her gynecological health are located in New

York, and the laboratories to which these medical providers have submitted Plaintiff's specimens

1

for testing are located in New York, New York. Accordingly, a majority of the evidence and the fact witnesses are located in New York.

5.    Plaintiff filed this case when she was a resident of Centerport, New York, which is located in the Eastern District of New York.

6.    New York law applies to this case. All DES cases in the Eastern District of New York are handled by Judge Jack B. Weinstein, who has adjudicated hundreds of DES cases involving New York law. The Eastern District of New York is a more appropriate jurisdiction to determine New York decisional law.

7.    A Special Master has been appointed by Judge Jack B. Weinstein in the Eastern District of New York for purposes of settlement of DES cases.

8.    The facts adduced during discovery demonstrate that the District of Columbia's contacts with this case are not as strong as the contacts clustered in the Eastern District of New York.

WHEREFORE, for the above reasons, the reasons stated in the attached Memorandum of Points and Authorities, and for good cause shown, Plaintiff respectfully requests that this action be transferred to the Eastern District of New York.

Respectfully submitted,


/s/ Brandon J. Levine
BRANDON J. LEVINE, (#412130)
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

and

LAW OFFICES OF SYBIL SHAINWALD,
P.C.
111 Broadway, Suite 403
New York, NY
212-425-5566

Counsel for Plaintiff

## REQUEST FOR ORAL HEARING

Pursuant to LCvR 7(f), Plaintiff respectfully requests an oral hearing on this Motion to

Transfer.

/s/ Brandon J. Levine
Brandon J. Levine, (#412130)

## LCvR 7.1(m) CERTIFICATION

Plaintiff requested consent for this motion from Defendants.    Defendant Elan

Pharmaceuticals has consented to transfer.  The remaining  Defendants have refused consent.

/s/ Brandon J. Levine
Brandon J. Levine, (#412130)

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTOIRE DUMONT, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | Civil Action No.: 07-CV-01635 (JR) |
| | ] | Next Event: |
| THE ABBOTT LABORATORIES, INC., | ] | |
| et al., | ] | |
| | ] | |
| Defendant. | ] | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HER MOTION TO TRANSFER TO
THE EASTERN DISTRICT OF NEW YORK**

**I.    INTRODUCTION**

Plaintiff Victoire Dumont brought this suit to compensate for cancer, infertility and other injuries caused by Plaintiff's exposure *in utero* to diethylstilbestrol ("DES"). New York is the most appropriate location for trial of this case, both for the convenience of the witnesses and for the interests of justice.

For the past three years of her life, Plaintiff has lived in the Eastern District of New York. *See* Exhibit A to Declaration of Brandon J. Levine, Esq., (hereinafter "Levine Dec."), the Affidavit of Plaintiff Victoire Dumont (hereinafter "Dumont Aff."). Plaintiff's currently treating physicians practice in New York, well within the subpoena power of the Eastern District. *See id.* Plaintiff was a resident of the Eastern District of New York when she filed this suit, and asserts claims under New York law. *See id.; see also* Levine Dec., Exhibit B (Complaint).

In Albin v. Eli Lilly and Co., Civil Action No. 04-986 (D.D.C. July 30, 2004), *see* Levine Dec., Exhibit C (case law), the District Court for the District of Columbia granted a DES

1

plaintiff's motion to transfer to the Eastern District of New York where the plaintiff's exposure and some of her medical treatment took place in New York, although the plaintiff was a Canadian resident. Here, Plaintiff is currently a resident of the Eastern District of New York, and all of her recent treatment has taken place in New York. Hence, Plaintiff's connection to New York is stronger than that in Albin, and transfer should be granted.

## II.    STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been brought. Plaintiffs could have initially brought this suit in the Eastern District of New York. All defendants are corporations, which are deemed to reside in any district that can exercise personal jurisdiction over them. See 28 U.S.C. § 1391(c). A plaintiff may sue in any district that a defendant resides, if all defendants reside within a state. See 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area. Defendants either currently conduct significant business within the state to subject them to jurisdiction or are subject to jurisdiction by virtue of having committed a tortious act against Plaintiff in New York, see N.Y. C.P.L.R. § 302. As all Defendants are subject to jurisdiction, and therefore reside, in the Eastern District of New York, this case could be brought there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have considered various other factors, including the private interests of the parties and the public interests of the court" in construing § 1404. Trout Unlimited v. United States Dep't of Ag., 944 F. Supp. 13, 16 (D.D.C. 1996).

The private interest considerations include, but are not limited to the (1) plaintiff's choice of forum, (2) the defendants' choice of forum, (3) whether the claim arose elsewhere, (4) the

convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof. Trout Unlimited, 944 F. Supp. at 16. The public interest considerations include (1) the familiarity of the transferee forum with the governing laws, (2) the relative congestion of the court calendars, and (3) the local interest in deciding local controversies at home. Id.

## III.    THE EASTERN DISTRICT OF NEW YORK IS MOST CONVENIENT FOR THE WITNESSES

The courts "must afford some deference" to Plaintiffs' choice of forum. Trout Unlimited, 944 F. Supp. at 17. Here, Plaintiffs elect to transfer; the weight of this factor is therefore militates in favor of transferring the case to the Eastern District of New York. When the current forum has few meaningful ties to or interest in a lawsuit, the court must be "especially cautious" in allowing a case to remain there. Trout Unlimited, 944 F. Supp. at 17. If the forum is not the plaintiff's home forum, and the injury and initial treatment occurred elsewhere, the balance of interests is in favor of transfer. Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 93 (D.D.C. 2005) (holding Maryland a more convenient forum where Texas residents were injured in Maryland and received treatment there). This is a New York products liability case where no parties are residents of the District of Columbia. The Eastern District of New York is the Plaintiff's home forum and the current injury and treatment have occurred in New York. This balance of interests favors transfer to a New York court.

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer. Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002). In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses located in each district; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for the

attendance of witnesses; and (5) the situs of the material events." 2002 U.S. Dist. LEXIS 759 at *6-7 (N.D. Ill. 2002). Here, there are no witnesses in the District of Columbia. New York is the site of the material events involving a majority of the witnesses, including Plaintiff's medical treatment. *See* Dumont Aff. The Eastern District of New York is the more convenient jurisdiction.

A witness's inconvenience is material when the inconvenience may make the witness unavailable to testify. Brannen, 403 F. Supp. 2d at 94. It will be inconvenient to require Plaintiff's treating doctor to leave New York to testify in the District of Columbia. Should Dr. Brownstein, Dr. Yi-Shin Kuo, or Dr. Kelly need to be subpoenaed, this Court does not have the power to do so, unlike the Eastern District of New York.

## IV.    THE EASTERN DISTRICT OF NEW YORK IS THE MOST APPROPRIATE FORUM FOR THE INTERESTS OF JUSTICE

The Eastern District of New York is a much better forum regarding the local interest factors. "Controversies should be resolved in the locale where they arise." Trout Unlimited, 944 F. Supp. at 19. In a diversity case, the public interest factors weigh in favor of having a jury apply its local laws. See Brannen, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts who are familiar with the intricacies and trends of local law and practice . . .

Bishop v. Wood, 426 U.S. 341, 346 n. 10 (1976).

This Court has no close connection with this case, and with the exception of a single scheduling conference, this Court has not yet occupied itself with the disposition of this case.

New York, the place of Plaintiff's current injuries, applies a market share theory to DES cases. See Hymowitz v. Eli Lilly, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of New York has extensive experience in applying New York law regarding DES cases. See, e.g., In re

4

DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail in reference to consolidated DES litigation).  The case would be assigned to Judge Jack Weinstein, who has a Standing Order referring all Eastern District DES cases to him.  Judge Weinstein has extensive experience in handling DES cases.  See In re DES Cases, supra.  The Eastern District of New York is the best district to interpret the market share law underpinning this case.

## IV. CONCLUSION

The Eastern District of New York is the most appropriate venue for this case.  It has subpoena power over witnesses and documents relevant to Plaintiff Victoire Dumont's DES-related injuries and has more experience with the governing law.  Therefore, Plaintiff requests to transfer this case to the Eastern District of New York.

Respectfully submitted,


/s/ Brandon J. Levine
BRANDON J. LEVINE (#412130)
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

and

LAW OFFICES OF SYBIL SHAINWALD, P.C.
111 Broadway, Suite 403
New York, NY
212-425-5566

Co-counsel for Plaintiff

**Exhibit 11**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NANCY THOMPSON and<br>MARK A. THOMPSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-122 (RBW) |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

## <u>ORDER</u>

The plaintiffs, Nancy and Mark Thompson, have brought this product liability action against the defendant, Eli Lilly and Company, for injuries that Mrs. Thompson alleges she suffered as a result of her mother's use of diethylstilbestrol ("DES") during her mother's pregnancy with Mrs. Thompson. The defendant seeks to have this case transferred to the District of Massachusetts "[b]ecause it would be more convenient for the parties to litigate this action in the District of Massachusetts — where the alleged exposure <u>in utero</u> to (DES) took place, where almost all of the fact witnesses reside -- and because there is absolutely no connection between the District of Columbia and plaintiffs' claims. Motion of Defendant Eli Lilly and Company to Transfer Action, Memorandum of Points and Authorities in Support of Eli Lilly and Company's Motion to Transfer ("Def.'s Mem.") at 2-3. Upon consideration of the parties' submissions and for the reasons set forth below, the Court will transfer this case to the District of Massachusetts.

1

28 U.S.C. § 1404(a) (2000) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. A district court is given broad discretion when considering whether to grant or deny a motion to transfer, which entails first determining whether the action could have been brought in the proposed transferee district and, if so, examining several private and public interest factors. While deference is typically given to a plaintiff's choice of forum and the moving party "bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted[,] Gemological Institute of America v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71 (D.D.C. 2001), courts recognize that less deference is given when the chosen forum is not the plaintiff's home forum, Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). With these considerations in mind, the Court will first examine whether this case could have been brought in the District of Massachusetts.

**(A)    Could This Action Have Been Brought in the District of Massachusetts?**

Before a case may be transferred to another judicial district, a court must determine whether the transferee district is a proper venue and can exercise personal jurisdiction. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred... In this case, it is undisputed that this action could have been brought in Massachusetts. This is because the alleged events that gave rise to the plaintiffs' claims occurred there, as Mrs. Thompson's mother received and ingested the DES in Massachusetts. Def.'s Mem. at 1. And, pursuant to Massachusetts' long-arm statute, it is also undisputed that a federal court in Massachusetts would be able to exercise personal jurisdiction over the defendant,

2

as Eli Lilly acknowledges that it had sufficient contacts with Massachusetts through its

sales of DES in that jurisdiction. Id. at 3. (citing Mass. Gen. Laws ch. 223A, § 3

(Massachusetts long-arm statute governing torts allegedly committed in Massachusetts)).

Having concluded that this action could have been brought in Massachusetts, the Court

will now evaluate whether the private and public interest factors favor the transfer of this

action.

**(B)    Do the Interests of the Parties and the Public Favor of Transferring this Case
to the District of Massachusetts?**

In considering a motion to transfer, a Court must examine several factors, such as:

"[t]he convenience of the witnesses of plaintiff and defendant; ease of access to sources

of proof; availability of compulsory processes to compel the attendance of unwilling

witnesses; the amount of expense for the willing witnesses; the relative congestion of the

calendars of potential transferor and transferee courts; and other practical aspects of

expeditiously and conveniently conducting a trial.   Boers, 133 F. Supp. 2d at 65 (D.D.C.

2001) (citation omitted).

Upon evaluating these factors, it is abundantly clear that this case should be

transferred to the District of Massachusetts. Massachusetts is the situs where the DES

was ingested and therefore the location where any injury resulting from its use occurred.

Nearly all of the fact witnesses reside in Massachusetts, including the plaintiffs, Mrs.

Thompson's mother, all of the physicians who have treated Mrs. Thompson for the injury

she allegedly sustained, and Mrs. Thompson's primary care physicians.  Def.'s Mem. at

1-2.  Furthermore, the ability to access much of the physical proof with the least effort

favors transfer to Massachusetts, as that is where Mrs. Thompson and her mother's

3

medical records are located. And, the pharmacies that sold Mrs. Thompson's mother the DES are also located there.[1]

In addition, because the majority, if not all of the witnesses reside in Massachusetts, any concerns regarding the availability of compulsory process and the expense of securing the presence of the witnesses also favor transfer to Massachusetts. While the plaintiffs focus on the relative congestion of the two courts' calendars as grounds for the case not being transferred,[2] the Court notes that this case is at an early stage of the litigation[3] and this Court's calendar is actually quite congested.[4]

Other relevant factors also weigh in favor of transferring this case to Massachusetts. Not only do the local interests in this matter strongly favor transferring

---

[1] Defendant notes that the three major issues in DES cases are: the questions of exposure, product identification, and the nature and extent of Mrs. Thompson's alleged injuries. Regarding exposure, defendant anticipates the need to obtain relevant medical records and to depose the physicians that are still alive who treated plaintiff's mother during her pregnancy. Def.'s Mem. at 5. As for product identification, defendant maintains it will need to depose the dispensing pharmacist or other pharmacy employees regarding the dispensing practices of the pharmacy or pharmacies in question. Id. Finally, regarding Mrs. Thompson's injuries, defendant contends that proof of the alleged injuries will come to the fact-finder in the form of medical records located in Massachusetts and from the testimony of Mrs. Thompson's and her mother's physicians. Three of the seven physicians identified by the plaintiffs who treated Mrs. Thomson are still living and believed to currently practice in Massachusetts. Id. at 6. In addition, most, if not all of the other witnesses and non-witness evidence are also located in Massachusetts.

[2] Plaintiffs' counsel seeks to make a comparison between the efficiency and speed of this Court and the District of Massachusetts in resolving DES cases. The basis offered for this comparison is two DES cases originally filed in this Court on October 7, 2002. Compare Christine Foti et ux v. Eli Lilly and Company, Civ.A. No. 02-1977, with Hillary Blank et ux v. Eli Lilly and Company, Civ.A. No. 02-1976. In the first case a motion to transfer the case to Massachusetts was granted on November 22, 2002, and according to the plaintiffs, no action has yet been taken by the Massachusetts district court. And, in an effort to make a comparison between the two jurisdictions, the plaintiffs assert that in the second case a settlement conference has been scheduled for August 5, 2003, before another member of this Court.

[3] This case is currently in the early stages of litigation as the close of discovery is not scheduled to occur until October 15, 2003.

[4] Neither party disputes that the assigned judicial settlement officer, Magistrate Judge Kay, has experience settling DES cases, which admittedly could contribute to the expeditious resolution of this action. However, the District of Massachusetts has been exposed to substantial DES litigation as well, see, e.g., Payton v. Abbott Labs., 100 F.R.D. 336 (D. Mass. 1983), and has had at least five DES cases transferred to it from this district in the last year and a half. Defendant's Reply in Support of its Motion to Transfer ("Def.'s Reply ) at 4. Therefore, the plaintiffs have failed to demonstrate that calendar congestion in the District of Massachusetts would unduly delay the resolution of this case or that this court is better equipped to ensure the timely processing of a DES case.

this case to Massachusetts, but it also appears that Massachusetts state law will govern the plaintiffs' claims.[5] And a Massachusetts court is better equipped to apply Massachusetts law, as another member of this Court has commented, the interests of justice "[a]re best served by having a case decided by the federal court in the state whose laws govern the interests at stake. Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 19 (D.D.C. 1996).

While this Court finds it significant that Massachusetts has such strong connections to this case, equally significant is that the District of Columbia has no such connection to this matter. The plaintiffs assert that there is a connection between the District of Columbia and their claims because this jurisdiction is where the original industry wide promotion of DES occurred and where defendant lobbied and applied for Food and Drug Administration approval to sell and promote DES. Plaintiffs' Opposition to Defendant's Motion to Transfer ("Pls' Opp'n ) a t 4. Plaintiffs also argue that the defendant spent over $6,500,000 in 2001 on marketing and lobbying efforts in the District of Columbia and currently employs at least 58 lobbyists in this jurisdiction. Id. at 5. Plaintiffs further note that the defendant itself has selected the District of Columbia as its home forum in litigation against its insurers involving coverage of the DES claims that have been filed against it. Id. This Court is unconvinced that these contacts, which have no direct connection to this case, favor maintaining this case in the District of Columbia.

---

[5] If this case remained in the District of Columbia, Massachusetts substantive law would most likely govern this litigation. To determine what law this Court would have to apply, it must use the District of Columbia's choice of law analysis. See Ideal Electronic Security Co. v. International Fidelity Ins. Co., 129 F.3d 143, 148 (D.D.C. 1997). And this analysis would seemingly compel this court to apply Massachusetts law.

Finally, the Court notes that this case is clearly distinguishable from a recent DES case in which this Court denied transfer pursuant to 28 U.S.C. § 1404(a). In Ingram v. Eli Lilly & Co., No. Civ.A. 02-2023, 2003 U.S. Dist. LEXIS 1619, (D.D.C. January 28, 2003) (Walton, J.), the plaintiff's injuries arose in Seattle, Washington. Id. at *5. However, the plaintiff's mother lived in Oklahoma; the prescribing obstetrician was located in California; plaintiff's expert witnesses resided in Texas, Arkansas, Pennsylvania and Alabama; and none of the expert witnesses that the defendant customarily used were located in the State of Washington State. Id. Thus, although the State of Washington was the location where the DES was prescribed and ingested, none of the vital witnesses remained in that jurisdiction. Id. In this case, there is no such concern over a lack of a substantial connection to one particular jurisdiction. Therefore, the plaintiffs' reliance on Ingram is misplaced.

Accordingly, it is, hereby this 27th day of June, 2003,

**ORDERED** that the defendant's motion to transfer the case is **GRANTED**. It is

**FURTHER ORDERED** that this case shall be transferred to the District of Massachusetts.


                                                    REGGIE B. WALTON
                                                    United States District Judge

6

**Exhibit 12**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VALERIE ABRAMSON, et al.,

    Plaintiffs,

      v.

ELI LILLY AND COMPANY,

    Defendant.

Civil Action No.  03-2541 (JDB)

### MEMORANDUM OPINION

This in utero diethylstilbestrol (DES) exposure case brought by plaintiff Valerie Abramson
and her husband Chett Abramson ("plaintiffs") against defendant Eli Lilly and Company is one of
many currently pending in this Court.  Following initial discovery, defendant has moved to
transfer the action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the
District of New Jersey, which defendant submits is a more convenient forum.[1]  The Court agrees
based on the specific facts of this case.

### FACTUAL BACKGROUND

There is no dispute as to certain facts central to the disposition of defendant's motion.
Plaintiffs reside in New Jersey, as do plaintiff Valerie Abramson's parents.  Ms. Abramson's
gynecologist during the relevant 1988 to 2001 period practices in New Jersey.  The other relevant
physicians identified by plaintiffs in interrogatory responses all practice in New Jersey and reside
in New York (well within the subpoena power of the District of New Jersey pursuant to

---

[1] Briefing on the motion was completed on August 31, 2004.

-1-

Fed.R.Civ.P. 45(b)(2)).  No non-party fact witness resides in the District of Columbia or is within the subpoena power of this Court.  None of the events relating to plaintiffs giving rise to this specific action have any connection to the District of Columbia.  As plaintiffs expressly agree, this case could have been brought in the District of New Jersey.

Plaintiffs do, however, claim some connection to the District of Columbia by virtue of defendant's lobbying and promotion efforts with the Food and Drug Administration ("FDA") relating to DES, which occurred largely in the District of Columbia, although for the most part long ago.  Plaintiffs also point out that defendant has itself brought suit in the District of Columbia against its insurers over DES claims.  Moreover, plaintiffs observe that many DES cases have been brought here, and that the judges of this Court, and particularly Magistrate Judge Kay, have developed an expertise in these cases.

## ANALYSIS

Most of the judges of this Court, including this judge,[2] have denied similar transfer motions in DES cases against Eli Lilly.  Where there is no connection to this forum and a strong connection to one other forum, however, transfer has been granted.  See Thompson v. Eli Lilly and Co., Civil Action No. 03-0122 (RBW) (D.D.C. June 27, 2003).

The Court agrees that this action could have been brought in the District of New Jersey.[3]  However, plaintiffs' choice of forum is entitled to some weight, although it is given less deference when (as here) the chosen forum is not the plaintiff's home forum.  See Piper Aircraft v. Reyno,

---

[2]  See Roing, et al. v. Eli Lilly & Co., Civil Action No. 02-2211 (JDB) (D.D.C.) (Order dated Jan. 28, 2003).

[3]  There is no doubt that the District of New Jersey would have jurisdiction over the action and that venue is proper there.

454 U.S. 235, 255-56 (1981); <u>Boers v. United States</u>, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). On the other hand, defendant has engaged in some lobbying and other efforts related to DES in the District of Columbia. Moreover, it is the forum of choice for many DES cases against Eli Lilly, and even has been the forum of choice by Eli Lilly for its litigation against insurers regarding coverage for DES claims.[4] Although it does not appear likely that the District Judges of this Court have developed much real expertise in the substance of these DES cases, certainly Magistrate Judge Kay has considerable experience in the settlement context. Finally, it is undisputed that plaintiffs and defendant both have counsel (the latter in the District of Columbia) experienced in handling this type of litigation, and that those counsel have cooperated in other DES cases in the District of Columbia with respect to making witnesses and documents (including medical records) readily available. These relevant factors, taken together, do not weigh clearly in favor of transfer to the District of New Jersey.

What may be different about this case, however, is the convenience of witnesses factor under section 1404(a). Indeed, "the most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." <u>Chung v. Chrysler Corp.</u>, 903 F. Supp. 160, 164 (D.D.C. 1996). The ease of access to sources of proof, the expenses for willing witnesses, and whether the claim arose elsewhere are all important considerations in this assessment. <u>See</u> <u>Trout Unlimited v. United States Dep't of Agriculture</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).

Here, all the relevant fact witnesses on exposure, injury and causation are more easily

---

[4] Eli Lilly opposed a motion to transfer in that case, defending its right to choose the District of Columbia courts against allegations that it was engaged in forum shopping. Defendant has explained, however, that the choice of forum there was based in part on the need to accommodate travelers from around the globe.

-3-

accessed in New Jersey than in the District of Columbia -- plaintiffs, Ms. Abramson's parents, her

gynecologist, and other treating physicians. No fact witness appears to be located in or close to

the District of Columbia. The subpoena power of the New Jersey court reaches all those

witnesses, while this Court's subpoena power does not.[5] The relevant medical records are also

more readily obtained in New Jersey from the various physicians. Nor, quite obviously, did the

claim, or any events giving rise to the claim, occur here.

Unlike many of the other DES cases, where relevant witnesses are spread around the

country (even in the District of Columbia), this is a case with a single forum that is plainly most

convenient for the witnesses -- the District of New Jersey. Moreover, that is the forum where

most of the operative facts occurred, although some also apparently occurred in other states but

not in the District of Columbia.[6] It is simply beyond cavil that transfer to the District of New

Jersey will be considerably more convenient (and less expensive) for the witnesses. Importantly,

that will also enable the relevant witnesses to be compelled to testify because they will be within

the subpoena power of that court, which is not the case were the action to remain in this Court.

Finally, given the very minimal connection of this lawsuit to the District of Columbia, it does not

seem appropriate to burden this jurisdiction and its limited resources, or even Magistrate Judge

---

[5] Conceivably, then, some of those witnesses could decline to appear if the case went
forward to trial in this Court.

[6] The Court does not find persuasive the argument that DES-related lobbying efforts to the
FDA tie this case to the District of Columbia. Documents related to those efforts have already
been produced to plaintiff's counsel. Likewise, a 1941 meeting of representatives of drug
manufacturers in Washington, D.C., is too attenuated a basis for connecting this action to the
District of Columbia.

Kay, with this case.[7]

Accordingly, defendant's motion to transfer this case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) in the interests of justice and for the convenience of the parties and witnesses will be granted. A separate order will be issued.

/s/    John D. Bates
JOHN D. BATES
United States District Judge

Dated:  October 25, 2004

---

[7] Plaintiffs emphasize the several other cases in this District in which transfer has been denied, including a case brought by Ms. Abramson's sister. The point remains, however, that section 1404(a) transfer motions are extremely fact-dependent, turning largely on the connection of the specific case to the transferee and transferor forums and the convenience and location of the relevant witnesses.

-5-

Copies to:

Patricia Martin Stanford
3609 Hendricks Avenue
Jacksonville, FL 32207
(904) 346-4215
Fax:  (904) 346-4275
E-mail: pmslaw1@aol.com
                    *Counsel for plaintiffs*

Lawrence Hedrick Martin
FOLEY HOAG LLP
1875 K Street, NW
Suite 800
Washington, DC 20006
(202) 223-1200
Fax:  (202) 785-6687
E-mail: lmartin@foleyhoag.com

James J. Dillon
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210-2600
(617) 832-1000
Fax:  (617) 832-7000
E-mail:  jdillon@foleyhoag.com
                    *Counsel for defendant*